**The ESTATE of Marilyn J. (Hinkle) CALCUTT, Appellant–Plaintiff,**

v.

**Billy A. CALCUTT, Appellee–Defendant.**

No. 14A04–9005–CV–240.[1]

Court of Appeals of Indiana, Fifth District.

Aug. 19, 1991.

Rehearing Denied Sept. 20, 1991.

1. This case was reassigned to this office on January 2, 1991.

W. Wyatt Rauch, Petersburg, for appellant-plaintiff.

Blake Chambers, Washington, for appellee-defendant.

SHARPNACK, Judge.

The estate of Marilyn (Hinkle) Calcutt appeals from a summary judgment awarding her surviving spouse, Billy Calcutt, both the statutory survivor's allowance of $8,500 and the refund of an overpayment of $8,344.02 by Billy Calcutt's insurer for medical care provided to Marilyn Calcutt. We affirm.

The estate claims the trial court erred:

(1) By concluding that no genuine issue of material fact existed with regard to Billy's claim for the surviving spouse's allowance pursuant to Ind.Code § 29–1–4–1;

(2) By concluding that no genuine issue of material fact existed with regard to Billy's claim seeking the proceeds of an overpayment by his insurance company for medical expenses incurred by Marilyn; and,

(3) By entering a judgment on Billy's underlying claims when no ruling had yet been made on the estate's pending counterclaim and setoff.

The facts are as follows. Before their 1985 marriage, Billy and Marilyn signed an antenuptial agreement which provided that all property owned by each party at the time of the marriage would remain the separate property of each, and that all property acquired after the marriage would be deemed jointly held property. The agreement made no provision for disposition of property after death nor any reference to the statutory rights of a surviving spouse. On January 22, 1986, Marilyn died.

Before the marriage, Marilyn executed a will leaving all of her property to her two sons. At Marilyn's death, Billy elected to take against the will and claimed the survivor's allowance of $8,500.00.

In addition to the survivor's allowance, Billy claimed $9,089.22 (later revised to $8,344.02) for an insurance overpayment made by Billy's health insurer for medical

expenses Marilyn incurred while in the hospital just before her death. Before Billy's marriage to Marilyn, and at all times during the marriage, Billy was a participant in the Boilermakers National Health and Welfare Fund. As a participant, Billy was entitled to health insurance benefits for himself and his dependents. Marilyn, meanwhile, was a participant in an individual medical policy through Blue Cross–Blue Shield. While the Boilermakers policy normally coordinated benefit payments with other insurance companies, it excluded individual policies such as Marilyn's Blue Cross–Blue Shield policy. Therefore, both insurance companies could, and did, pay for the expenses Marilyn incurred during her illness. Blue Cross–Blue Shield paid first. When Good Samaritan Hospital realized that the hospital had received overpayment for Marilyn's medical expenses, it forwarded the overpayment to Marilyn's estate. Because Billy is the "plan participant," he filed a claim with the estate to recover what he considered to be his rightful property.

Both of Billy's claims were disallowed and transferred for trial. Billy moved for summary judgment and the trial court granted summary judgment for Billy on both claims.

■ When we review a trial court's entry of summary judgment, we are bound by the same standard as the trial court: we must consider all of the pleadings, affidavits, depositions, admissions, answers to interrogatories, and, where applicable, testimony in the light most favorable to the nonmoving party in order to determine whether a genuine issue of material fact remains for resolution by a trier of fact. *Ayres v. Indian Heights Volunteer Fire Dept., Inc.* (1986), Ind., 493 N.E.2d 1229, 1234. A genuine issue of material fact exists where facts concerning an issue that would dispose of the litigation are in dispute or where the undisputed facts are capable of supporting conflicting inferences on such an issue. If we have any doubts concerning the existence of a genuine issue of material fact, we must resolve those doubts in favor of the nonmoving party, and we must reverse the entry of summary judgment. *Woodward Insurance, Inc. v. White* (1982), Ind., 437 N.E.2d 59, 62. However, if no genuine issue of material fact exists, and if the moving party is entitled to judgment as a matter of law, we must affirm the entry of summary judgment. *Id.* The moving party bears the burden of showing the absence of a factual issue and that he is entitled to judgment as a matter of law. *Norman v. Turkey Run Community School Corp.* (1980), 274 Ind. 310, 312, 411 N.E.2d 614, 615.

We take up first the issues related to the survivor's allowance. The estate claims that Billy cannot have summary judgment because:

(1) Billy failed to prove by competent evidence that he was the spouse of Marilyn.

(2) Billy waived the survivor's allowance under the antenuptial agreement.

(3) Billy waived the survivor's allowance by electing to take against Marilyn's will.

(4) Billy agreed in the antenuptial agreement that he would have no interest in Marilyn's estate unless it exceeded at death its amount at the time of the marriage.

(5) It was necessary to look to extrinsic evidence in order to understand the antenuptial agreement and determine the state of mind of the parties which makes summary judgment inappropriate.

(6) Billy's adultery and abandonment of Marilyn barred any interest he might have had in Marilyn's estate.

(7) Any amount Billy might receive should be held in trust for the benefit of Marilyn's sons.

[2, 3] We address first the estate's claim that Billy failed to prove his marriage to Marilyn and, specifically, the claim that the marriage license copy was inadmissible because it was not authenticated. Billy submitted a photocopy of the parties' marriage license, complete with a certificate of the marriage, as evidence of his marriage to Marilyn. The estate contends that this photocopy is not admissible pursuant to

Indiana Trial Rule 44(A)(1) because the copy has not been authenticated. Trial Rule 44(A)(1) states in part that:

> [a]n official record kept within ... any state ..., when admissible for any purpose, may be evidenced by an official publication thereof or by a copy attested by the officer having the legal custody of the record, or by his deputy.

At the bottom of the copy of the parties' marriage license, the Deputy Clerk of Henderson County in Kentucky has certified, for the Clerk, that the copy of the parties' marriage license is a true and correct copy of the parties' original marriage license. Therefore, the photocopy establishes the fact of Billy's marriage to Marilyn, has been authenticated and is admissible evidence. Also, the affidavit of the executor filed by the estate acknowledged the marriage.

Once Billy established that he was in fact married to Marilyn, the burden shifted to the estate to introduce evidence to create a genuine issue of material fact concerning whether the two were indeed married. Because the estate failed to introduce such evidence, no genuine issue of material fact exists on this point.

We look now to the estate's argument that Billy waived the right to claim the survivor's allowance by entering into the antenuptial agreement. As set out in *Bohnke v. Estate of Bohnke* (1983), Ind. App., 454 N.E.2d 446:

> Ind.Code 29–1–2–13 provides that a person may waive, in writing, any expectancy in her spouse's estate after full disclosure of the right being waived. This section controlled [the plaintiff's] waiver of her surviving spouse's allowance— clearly an "expectancy" in [the decedent's] estate within the meaning of Ind. Code 29–1–2–13.

*Id.* at 448.

■ Billy did not waive, in writing, any expectancy in Marilyn's estate.[2] The estate argues that Billy's antenuptial agreement constituted a waiver of his allowance, or a contract or an agreement not to pursue his allowance. No language in the antenuptial agreement supports this argument by the estate. The survivor's statutory allowance is not mentioned in the antenuptial agreement. In addition, there is no evidence in the record to indicate that Billy received any disclosure of the statutory right to the survivor's allowance which he allegedly waived. Therefore, following *Bohnke*, Billy should be entitled to the statutory survivor's allowance as provided for in I.C. § 29–1–4–1 as follows:

> Sec. 1. The surviving spouse of a decedent who was domiciled in Indiana at his death is entitled from the estate to an allowance of eight thousand five hundred dollars ($8,500) in personal property.

■ The estate argues that the election of Billy to take against the will of Marilyn under I.C. § 29–1–3–1 precludes him from also receiving the survivor's allowance under I.C. § 29–1–4–1. The estate, citing no authority, bases the argument on the provision in I.C. § 29–1–3–1(c) that states:

> In electing to take against the will, the surviving spouse is deemed to renounce all rights and interest of every kind and character in the personal and real property of the deceased spouse, and to accept such elected award in lieu thereof.

The answer to this argument by the estate is found in that portion of I.C. § 29–1–4–1 which states "[a]n allowance under this section is not chargeable against the distributive shares of ... the surviving spouse...." As set out in I.C. § 29–1–3–1(a), when one is the second spouse of the decedent, has no children by the decedent, and elects to take against the decedent's will and the decedent is survived by a child, one takes 1/3 of the net personal estate of the testator, plus a life estate in 1/3 of the

---

2. The estate additionally contends that, during his marriage to Marilyn, Billy allegedly stated that he did not want any of Marilyn's property. Therefore, the estate argues, it would be inherently inequitable to allow Billy to have any rights now in Marilyn's property. Again, following *Bohnke*, any expectancy in a spouse's estate may be validly waived, so long as the waiver is in writing and so long as the party waiving the right has received full disclosure of the right being waived. The estate has not introduced evidence to prove either of these two elements, thus this argument by the estate must also fail.

lands of the testator. According to I.C. § 29–1–3–1(d):

> When a surviving spouse elects to take against the will, the surviving spouse shall be deemed to take by descent, as a modified share, the part of the net estate as does not come to the surviving spouse by the terms of the will.

Therefore, pursuant to the above two statutes, the spouse's statutory allowance is not chargeable against the distributive share due a spouse when the spouse elects against a will. Finally, we note that the 1975 comments of the Indiana Probate Code Study Commission to I.C. § 29–1–4–1 specifically state that the survivor's allowance is a lawful claim against the estate.

■ The estate also argues that even though the antenuptial agreement may not constitute a waiver of the right to the survivor's allowance, it can be construed as an agreement by Billy that he would have no interest in the estate of Marilyn until its value at her death was greater than its value at the time of their marriage. There is nothing in the agreement that could be read to support this argument.

■ Finally, with regard to the statutory allowance, the estate argues that summary judgment is not appropriate because an understanding of the agreement involves "state of mind" and "knowledge," and that extrinsic evidence is required to construe the agreement because it is ambiguous. The estate cites *Blakely Corporation v. Klain* (1989), Ind.App., 538 N.E.2d 304 for the proposition that summary judgment is an inappropriate mechanism to resolve "state of mind" or "knowledge" issues. What *Blakely* actually states, however, is that "[s]ummary judgment is an inappropriate mechanism to resolve 'state of mind' or 'knowledge' *unless, of course the undisputed facts support but one reasonable inference.*" *Id.* at 307 (emphasis added). The undisputed facts surrounding this issue support but one reasonable inference: Billy in fact did not waive his statutory survivor's allowance.

■ The estate argues that the court here must resort to other evidence to show the amount of separate property each party had prior to marriage. What each party had prior to marriage is not relevant in determining whether Billy is entitled to his statutory allowance or whether Billy is entitled to the benefits from the insurance overpayment. In addition, what each party had prior to marriage is not a material fact. "A fact is material if its resolution is decisive of either the action or a relevant secondary issue." *Jones v. City of Logansport* (1982), Ind.App., 436 N.E.2d 1138, 1143. The amount of property that Billy and Marilyn had prior to their marriage is not a material fact which, if resolved, would be decisive of either this action or a relevant secondary issue involved.

■ The estate's argument that Billy must forfeit his claim to a survivor's allowance because of his adultery and abandonment of Marilyn pursuant to I.C. § 29–1–2–14 and I.C. § 29–1–2–15 must also fail. I.C. § 29–1–2–14 states:

> If either a husband or wife shall have left the other *and* shall be living at the time of his or her death in adultery, he or she as the case may be shall take no part of the estate of the deceased husband or wife. (emphasis added)

*Gaylor v. McHenry* (1860), 15 Ind. 383, discussed this statute and held the following:

> While it is true that a single act would make the plaintiff an adulteress, it does not follow, we think, that, of course, she would be living in adultery, within the meaning of this statute, at the time of her husband's death. If the law makers had intended that the commission of that single crime should bar the right to a distributive share in the estate, it certainly could have been expressed in fewer words and more pointed style. We suppose the intention was to bar the right of those, who should be given over to immoral practices; whether *continuously with one other person, or indiscriminately with many*. The fact, if found to be so, that the crime was once committed *under circumstances showing a deep degree of abandonment*, might, with the other circumstances of the case, have

been submitted to the jury, to enable them to determine as to her course of life at the time of her husband's death.

*Id.* at 385. (emphasis added)

According to I.C. § 29–1–2–15, "[if] a person shall abandon his or her spouse without just cause, he or she shall take no part of his or her estate."

The estate argues that Billy abandoned Marilyn and was living in adultery at the time of Marilyn's death. The estate contends that Billy's "amoral" behavior at the time of Marilyn's death, coupled with Billy's alleged premarital and post-marital abuse of Marilyn, give rise to a genuine issue of material fact as to whether Billy should be entitled to any of Marilyn's estate.

The following are excerpts from the affidavit of Gary Hinkle (Marilyn's son):

In January of 1986 Billy called me and said he was bringing Mom home to the Good Samaritan Hospital in Vincennes to die and that she would be flown in January 11, 1986. Billy had called Good Samaritan Hospital a few days before and convinced Dr. Montgomery that they might be able to help her ... The 11 days that Mom was in the Good Samaritan Hospital at Vincennes, Billy was not around the hospital much. He started drinking and seeing a woman, Darlene Stoll. The night Mom died, Billy was at Hillies, drunk, and carrying on with Darlene. He was living in Mom's house while in Indiana. When I went looking for him to see how and what he was doing (the day after Mom's death) Mom's house looked like he had had a party. Empty beer cans were everywhere and in the bedroom there were some woman's clothes at the end of the bed. There was also makeup (not Mom's) in the bathroom. By the end of the funeral, he did clean up some because some people stopped by. But early that evening he was at Hillies partying like nothing had ever happened.

Indiana courts have defined abandonment as:

the act of a husband or wife who leaves his or her consort willfully, without justi-fication either in the consent or wrongful conduct of the other, and with an intention of causing a perpetual separation of the parties....

*Morehouse v. Koble et al.* (1923), 80 Ind. App. 418, 141 N.E. 254.

The statements made by Marilyn's son indicate that Billy had been with Marilyn during her final days at the hospital, albeit he was not around "that much." In addition, according to Marilyn's son, during this same time frame Billy was actually living in Marilyn's house. As stated above, abandonment requires the act of leaving one's spouse with the intent to cause a lasting separation. The evidence provided by the estate is, at best, only suggestive of adultery, and does not satisfy the elements of abandonment. Because both of the statutes upon which the estate relies for this segment of their argument require abandonment, this argument by the estate must fail.

The estate has not demonstrated any error in the granting of summary judgment as to the survivor's allowance.

The estate makes the following claims in its challenge to the summary judgment in favor of Billy as to the health insurance overpayment:

(1) The affidavit of Vicki Davis regarding the insurance plan is not competent evidence by reason of the Dead Man's Statute as to agents, Ind.Code § 34–1–14–8, and contains opinion testimony without foundation.

(2) The antenuptial agreement provides that property acquired by either of the parties after the marriage shall be jointly held property and the overpayment is such after-acquired property.

(3) Any allocation of the overpayment to Billy should be in proportion to the payments made by his insurer and Marilyn's insurer.

In addition, the estate argues, as it did with respect to the survivor's allowance, that Billy had agreed by the antenuptial agreement that he would have no interest in Marilyn's estate until it was equal to what it was at marriage; and that sum-

mary judgment was otherwise inappropriate because extrinsic evidence is needed to understand the contract and determine the state of mind of the parties. These arguments are of no more effect as to the overpayment than they were as to the survivor's allowance.

The estate's contention that the affidavit of Vicki Davis is inadmissible under the Dead Man's Statute has no merit. The purpose of I.C. § 34–1–14–8 is to prevent an agent of a person who is still living from testifying on behalf of his principal against the estate of the other party to a contract. *Foster v. Honan* (1899), 22 Ind. App. 252, 53 N.E. 667. In this case, the purpose of the statute would be to bar Billy's alleged agent from testifying on Billy's behalf and against Marilyn's estate concerning any contract the agent made or continued between Billy and Marilyn. Ms. Davis is an employee of Boilermakers National Health and Welfare Fund, the insurer that made the overpayment at issue. As such, Davis submitted an affidavit in that capacity only. Davis did not testify as to a contract that she made, or caused to continue, between Billy and Marilyn. Davis instead testified to the terms of Billy's insurance policy. The estate has offered no evidence to support its allegation that Ms. Davis ever acted as Billy's agent in any capacity.

Trial Rule 56(E) states in part that "(s)upporting ... affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Davis established both her personal knowledge of the underlying facts and her competency to testify to those facts by stating that she was the Claims Manager of the Boilermakers National Health and Welfare Fund and, as such, was familiar with the provisions of the Fund's Plan for Active Boilermakers and Their Families. Based on her personal knowledge and competency, Davis set forth facts in her affidavit, such as the fact that Billy was a participant in the aforementioned Plan and that the exhibit attached to

the affidavit was an accurate statement of the coordination of benefits provision of Billy's Plan.

[14] Billy also prevails on the question concerning whether the benefits of the insurance plan should be considered as after-acquired property held jointly by Billy and Marilyn, or as Billy's separate property. Billy argues that he owned the insurance plan separately at all times before and during his marriage, and we agree. The following terms of Billy's plan support this position:

*Section 1.* All benefits will be paid by the Fund to the Employee as they accrue....

*Section 2.* Benefits payable hereunder shall not be subject in any manner to anticipation, alienation, sale, transfer, assignment, pledge, encumbrance, or charge by any person, however, any Employee may direct that benefits due him be paid to an institution in which he or his Dependent is hospitalized or to any provider of medical services or supplies in consideration for medical or hospital services rendered or to be rendered.

\*    \*    \*    \*    \*    \*

*Section 4.* In the event the Fund determines that the Employee is incompetent or incapable of executing a valid receipt or assignment and no guardian has been appointed, or in the event the Employee has not provided the Fund with an address at which he can be located for payment, the Fund may, during the lifetime of the Employee, pay any amount otherwise payable to the Employee, to the husband or wife or relative by blood of the Employee, or to any other person or institution determined by the Fund to be equitably entitled thereto; or in the case of the death of the Employee before all amounts payable ... have been paid, the Fund may pay any such amounts to any person or institution determined by the Fund to be equitably entitled thereto. The remainder of such amount shall be paid to one or more of the following relatives of the Employee: lawful spouse, child or children, mother, father, brothers or sisters, or to the Employee's

estate, as the Board of Trustees in its sole discretion may designate.

The estate argues that Marilyn owned the property with Billy as a tenant in common, because the proceeds of the policy consist of after-acquired property that the two had agreed would be held jointly. We do not agree. Under the terms of the policy, Billy did not possess an interest that he could transfer. Billy's only interest under the policy was an interest in potential future medical benefits. The terms of Billy's insurance policy state clearly that benefits payable under the policy may not be transferred by *any person*, which would include Billy. Thus, even if Billy had attempted transfer to Marilyn of one-half interest in his insurance policy, he would have been unsuccessful under the terms of his contract. As the terms of the policy state, the Board of Trustees retains full discretion even as to who should receive unpaid benefits upon Billy's death. By the very terms of the contract, the policy may not be transferred to another to be held as joint property, with or without rights of survivorship. The most power Billy possessed under the terms of his insurance contract was to direct payments of benefits to medical providers. In addition, the amount representing the overpayment was not paid to the estate until after the death of Marilyn and was therefore not acquired during the marriage. For these reasons, Billy should prevail on this portion of the issue.

■ The estate claims that any allocation of the overpayment to Billy should be in proportion to the payments made by his insurer and Marilyn's insurer. However, in its argument, the estate does not state any contentions with respect to the issue presented, any reasons in support of its contentions or any citations to authorities, statutes, or parts of the record relied upon. In addition, the estate does not supply a clear showing of how this issue, and any contentions in support thereof, relate to the particular facts of this case. Thus, pursuant to Ind. Appellate Rule 8.3(A)(7), the estate has waived this issue because the estate has failed to provide cogent argument with adequate citation of authority. In *Keller v. State* (1990), Ind., 549 N.E.2d 372, the supreme court stated that the requirement that a party provide such, serves at least the two following objectives:

> First, it affords opposing parties a fair opportunity to respond. Second, it promotes impartiality in the appellate tribunal; a court which must search the record and make up its own arguments because a party has presented them in perfunctory form runs the risk of being an advocate rather than an adjudicator.

*Id.* at 373. Therefore, for the reasons set out in *Keller*, the estate has waived this issue on appeal.

■ The estate also argues that if Billy is entitled to either or both of the survivor's allowance and the overpayment, the court should force Billy to hold that allowance in constructive trust for Marilyn's two sons. To support this argument, the estate defines a constructive trust as follows:

> A constructive trust, or as frequently called an involuntary trust, is a fiction of equity devised to the end that the equitable remedies available against a conventional fiduciary may be available under the same name and processes against one who through fraud or mistake or by any means *ex maleficio* acquires property of another.

28 I.L.E. *Constructive Trusts* § 71 (1960). For the many reasons detailed above, this argument by the estate lacks merit. Billy has not acquired his statutory allowance through fraud, mistake or any means *ex maleficio*. Billy has a right to the statutory allowance pursuant to I.C. § 29–1–4–1, and the evidence does not support the estate's contention that he has waived this right. Furthermore, Billy has not acquired the insurance overpayment through fraud, mistake or any means *ex maleficio*. Thus, Billy has a right to these benefits pursuant to his contract with his insurance company.

■ Finally, the estate argues that the trial court erred by entering a judgment on the underlying claim when no ruling had yet been made on the estate's pending counterclaim and setoff. Again, in its argument, the estate does not state any rea-

sons in support of its contention or any authorities, statutes, or parts of the record relied upon. In addition, the estate does not supply a clear showing of how this issue, and its contention in support thereof, relate to the particular facts of this case. Thus, pursuant to App.R. 8.3(A)(7) and the holding in *Keller*, the estate has also waived this issue.

For the reasons stated above, the trial court's summary judgment on all three issues is affirmed.

AFFIRMED.

MILLER and HOFFMAN, JJ., concur.