Elmos JEWELL, Appellant–Defendant,

v.

CITY OF INDIANAPOLIS,
Appellee–Plaintiff.

No. 49A02–1010–OV–1228.

Court of Appeals of Indiana.

June 14, 2011.

Rehearing Denied Aug. 4, 2011.

Todd Ess, Indianapolis, IN, Attorney for Appellant.

Alexander Will, Deputy Chief Litigation Counsel, Silvia Miller, Assistant Corporation Counsel, Office of Corporation Counsel, Indianapolis, IN, Attorneys for Appellee.

## OPINION

FRIEDLANDER, Judge.

Elmos Jewell appeals from a judgment of the Marion County Superior Court finding him in violation of § 531–728 of the Revised Code of the Consolidated City and Marion County (the Revised Code). Jewell presents the following consolidated and restated issue for review: Did the City of Indianapolis (the City) waive enforcement of § 531–728 by not explicitly referring to that section in a written agreement resolving the allegations against Jewell?

We affirm.

The facts are that on August 22, 2008, Animal Care and Control Division of the Department of Public Safety (ACCD) Officer Tracy Hutchens issued citations to Jewell for violations of several ordinances in the Revised Code. Those included allegations that Jewell violated: § 531–401 (concerning animal care and treatment); § 531–301 (requiring rabies vaccinations for dogs and cats); § 531–302 (requiring a tag and a record of rabies vaccinations); § 531–202 (requiring permanent identification of dogs and cats); and § 531–102 (prohibiting allowing animals to roam the city at large). On June 5, 2009, the City and Jewell submitted for the trial court's approval an agreed judgment and order (Agreed Judgment), which was drafted by the City, in which Jewell admitted violating § 531–401 and in which he agreed to pay a civil fine of $100 and court costs of $114. Because it will help illuminate our discussion of context later in this opinion, we set forth in its entirety the ordinance that Jewell admitted violating, as follows:

(a) Every owner or keeper of an animal kept in the consolidated city and county shall see that such animal:

(1) Is kept in a clean, sanitary and healthy manner and is not confined so as to be forced to stand, sit or lie in its own excrement; the person(s) responsible for animal(s) shall regularly and as often as necessary to prevent odor or health and sanitation problems, maintain all animal areas or areas of animal contact;

(2) Has food that is appropriate for the species in adequate amounts to maintain good health, fresh potable drinking water where appropriate, shelter and ventilation, including quarters that are protected from excessive heat and cold and are of sufficient size to permit the animal to exercise and move about freely;

(3) Shall not be tethered by use of a choke collar, or on any collar too small for the size and age of the animal, or by any rope, chain or cord directly attached to the animal's neck, or by a leash less than twelve (12) feet in length, or by any tether or leash without swivels on both ends, or of such unreasonable

weight as to prevent the animal from moving about freely;

(4) Is protected against abuse, cruelty, neglect, torment, overload, overwork, or any other mistreatment;

(5) Shall provide the reasonably necessary medical care, in addition to the required rabies vaccination which shall include recommended vaccinations as required by accepted veterinary standards, and if diseased or injured, or exhibiting symptoms of disease, receives proper care and is segregated from other animals so as to prevent transmittal of the disease; and

(6) Is maintained in compliance with all applicable federal, state and local laws and all regulations respecting animal care and control as are adopted by the city department of public safety and in effect from time to time.

(b) It shall be unlawful for a person to beat, starve or otherwise mistreat any animal in the city, or to fail to comply with any requirement of subsection (a) of this section.

(c) It shall be unlawful for any animal to be tethered between the hours of 11:00 p.m. and 6:00 a.m.; or to tether any un-sterilized dog for any period of time unless it is monitored by a competent adult for the duration of such tethering; or to tether or confine an animal at a vacant structure or premises for any purpose or time when it is not monitored by a competent adult who is present at the property for the duration of such tethering or confinement.

(d) In the discretion of the enforcement authority, as that term is defined in section 531–711 of this Code, a person who violates any provision of this section for the first time may be given written notice of the practices or conditions which constitute the violation, and the enforcement authority shall in such instance direct remedies to such person where appropriate and provide a time period of no longer than thirty (30) days within which to correct the violation(s). Failure of the person to correct the violations within the specified time period shall constitute prima facie evidence of this section.

(e) A person who violates any provision of this section shall be punishable as provided in section 103–3 of this Code; provided, however, the fines imposed for any such violations shall be as follows:

(1) For the first violation, not less than twenty-five dollars ($25.00); and

(2) For the second or subsequent violations, not less than two hundred dollars ($200.00), and the court upon request shall order forfeiture or other disposition of the animal involved. A judgment by the court which orders forfeiture or other disposition of the animal by the city or any third party shall include as a part of such judgment adequate provisions for the collection of costs of forfeiture or impoundment from the person found in violation.

Indianapolis—Marion County, Indiana—Code of Ordinances, § 531–401, *available at* http://library.municode.com/HTML/12016/level3/TITIIIPUHEWE_CH531AN_ARTIVCATR.html# TITIIIPU-HEWE_CH531AN_ARTIVCATR_S531–410PRBIEX. In addition to paying a fine and costs, Jewell agreed to the following terms:

Defendant further agrees to be permanently enjoined from knowingly allowing an animal kept by him to be at large in the City of Indianapolis. Defendant also

agrees to be permanently enjoined from neglecting or mistreating an animal kept by him or from otherwise violating Sec. 531–401, Care & Treatment of the Revised Code.

*Appellant's Appendix* at 32. The trial court accepted the agreement and entered an order approving those terms, i.e., the Agreed Judgment.

Thereafter, while conducting a routine inspection of Jewell's neighborhood on August 18, 2010, ACCD Officer Joyce Birse and ACCD Assistant Administrator Amber Myers observed six dogs at Jewell's residence. None of the animals were spayed or neutered. Officer Birse impounded the animals and issued a citation to Jewell for violating § 531–728 of the Revised Code. That section provides as follows:

It shall be unlawful for any person *who has been found in violation of sections* 531–102, 531–103, 531–109, 531–204, 531–206, *531–401,* 531–402, 531–404, or article V of this chapter, to own or keep more than two (2) dogs in the city or to own or keep any dog;

(1) That has not been spayed or neutered by a veterinarian; or

(2) That has not been implanted with a microchip with a registered identification number.

Indianapolis—Marion County, Indiana— Code of Ordinances, § 531–728, *available at* http://library.municode.com/HTML/ 12016/level4/TITIIIPUHEWE_CH531AN_ ARTVIIENAU_DIV2IMDIAN.html (emphasis supplied).

On September 10, 2010, the trial court heard testimony and took judicial notice of the Agreed Judgment and found Jewell in violation of § 531–728. As a result, Jewell was ordered to pay $600 in fines plus $114 in costs. Moreover, the court ruled that, pursuant to § 531–728, Jewell could return only as many as two of the impounded dogs to the property from which they were impounded, and then only if those two dogs were spayed or neutered. He could recover the remaining four dogs only if he kept the dogs outside of Marion County. The court also determined that Jewell could reclaim all of the dogs and none would have to be spayed or neutered so long as they were not kept in Indianapolis. In any event, Jewell would have to pay the $160–per–dog kenneling fee in order to recover the dogs. Jewell appeals from this ruling.

■ The parties fundamentally disagree as to the applicable standard of review. Jewell contends that this appeal involves the interpretation of a contract (i.e., the Agreed Judgment) and therefore should be reviewed on that basis—as a contract dispute. On the other hand, the City contends that the ruling under review is a general judgment resulting in the finding of an ordinance violation. We agree with the City that, ultimately, this is an appeal from a finding of an ordinance violation and therefore review it as a general judgment.

■ At the conclusion of the hearing, the trial court explained its decision in a manner that constitutes findings of fact. Where a trial court enters findings of fact and conclusions of law sua sponte and without being required to do so by rule, specific findings control only as to issues they cover, and a general judgment standard applies to any issues upon which the trial court has not made findings. *Perdue v. Murphy,* 915 N.E.2d 498 (Ind.Ct.App. 2009). When reviewing findings, we determine whether the evidence supports the findings and then whether the findings support the judgment. *Id.* We will reverse such a judgment only when it is shown to be clearly erroneous, i.e., when it is unsupported by the findings of fact and conclusions thereon, *id,* or when the trial court

applies the wrong legal standard. *Fraley v. Minger,* 829 N.E.2d 476 (Ind.2005). We defer substantially to the trial court's findings of fact, but we evaluate conclusions of law de novo. *Id.*

■ The pertinent facts in this case are essentially undisputed. The City alleged that Jewell violated five city ordinances concerning animals kept on his property. He and the City negotiated an agreement whereby he would admit violating one of the ordinances in exchange for the City's agreement to drop the remaining allegations. The ordinance upon which the lone remaining allegation was based, i.e., § 531–401, prohibited neglect and mistreatment of animals in a variety of specific ways. The parties agreed that the sanction for the violation would be three-fold: Jewell (1) would pay a civil fine and costs, (2) agreed that he would not keep an animal at large in the City of Indianapolis, and (3) agreed "to be permanently enjoined from neglecting or mistreating an animal kept by him or from otherwise violating Sec. 531–401." *Appellant's Appendix* at 32. This agreement was reduced to writing and submitted to the trial court for approval. Sometime after an order was entered approving the terms of the agreement, Jewell was charged with violating § 531–728. The relevant portion of that provision places additional restrictions upon persons who have previously been found in violation of, among other provisions, § 531–401. It is at this point that the parties' views diverge. We believe this disagreement can be reduced to a single question—did the failure to mention § 531–728 in the Agreed Judgment indicate that the City waived enforcement of that provision? We conclude that it did not.

We are mindful that a proceeding related to the violation of a city ordinance is civil in nature, *see Boss v. State,* 944 N.E.2d 16 (Ind.Ct.App.2011), and agree that the bargained-for resolution of the charges against Jewell is a contract of sorts. But we are inclined to view the Agreed Judgment more as something akin to a plea agreement in the criminal context. "Our courts have long held that plea agreements are in the nature of contracts entered into between the defendant and the State." *Lee v. State,* 816 N.E.2d 35, 38 (Ind.2004). Our Supreme Court has explained:

> [A] plea agreement is contractual in nature, binding the defendant, the state and the trial court. The prosecutor and the defendant are the contracting parties, and the trial courts role with respect to their agreement is described by statute: If the court accepts a plea agreement, it shall be bound by its terms.

*Id.* (quoting *Pannarale v. State,* 638 N.E.2d 1247, 1248 (Ind.1994) (citation and quotation omitted)). As reflected in this portion of *Lee,* one key difference between a plea agreement and a traditional contract is that in the former, the trial court must approve the terms of the agreement and then enter an order enforcing the agreement's provisions. In this sense, the bargain struck in the plea agreement process cannot be viewed as an arms-length bargain for consideration, as is the case in traditional contracts. *See, e.g., Dexter Axle Co. v. Baan USA, Inc.,* 833 N.E.2d 43 (Ind.Ct.App.2005). Rather, it is a negotiated settlement of allegations of impropriety lodged by one against the other. We bear this in mind as we proceed to interpret the Agreed Judgment's meaning.

Jewell argues that the ordinances specifically cited or referred to in the Agreed Judgment are the only ones the City may enforce as to Jewell via application of the legal maxim *expressio unius est exclusio alterius.* This Latin phrase is a canon of

construction pursuant to which the express inclusion of certain things implies the exclusion of all else. *See Januchowski v. N. Ind. Commuter Transp. Dist.*, 905 N.E.2d 1041 (Ind.Ct.App.2009), *trans. denied.* We note, however, that this maxim has not been deemed universally applicable in any case where a provision specifically mentions certain items or elements. Indeed, it has been described as "masquerad[ing] as [a] rule[ ] of interpretation while doing nothing more than describing results reached by other means." F. Reed Dickerson,[1] *The Interpretation and Application of Statutes* 234–35 (1975). Dickerson explained:

> Far from being a rule, it is not even lexicographically accurate, because it is simply not true, generally, that the mere express conferral of a right or privilege in one kind of situation implies the denial of the equivalent right or privilege in other kinds. Sometimes it does and sometimes it does not, and whether it does or does not depends on the particular circumstances of context. Without contextual support, therefore, there is not even a mild presumption here. Accordingly, the maxim is at best a description, after the fact, of what the court has discovered from context.

*Id.* We agree that this maxim is sometimes of questionable utility in discerning intent and that context determines whether it is applicable at all. In this case, context dictates that the maxim does not apply.

Jewell was charged with violating five city ordinances involving the care and treatment of animals. In exchange for his agreement to admit one of those violations, the City agreed to drop the remaining allegations. In addition, the City agreed to impose, and Jewell agreed to pay, a fine that was less than the maximum allowable by ordinance. The other two "conditions" mentioned in the Agreed Judgment were that Jewell would not permit his animals to roam at large in the city and that he would not neglect or mistreat an animal in his care. Taken to its logical extreme, Jewell's argument would indicate that the inclusion of these two "conditions" indicates that, with respect to Jewell, they were the only existing restrictions upon his activities while in Indianapolis that are otherwise governed by city ordinances. Of course, we understand that Jewell focuses this argument only upon § 531–728. Nevertheless, we can find no meaningful justification for waiving enforcement of § 531–728 that does not also apply with equal force to any other City of Indianapolis ordinance that was not mentioned in the Agreed Judgment. Put plainly, Jewell's interpretation would mean not only that the City waived enforcement of ordinance § 531–728 with respect to Jewell, but upon the same rationale it also waived enforcement of all other city ordinances not specifically mentioned in the Agreed Judgment. This interpretation would produce an absurd result that was clearly never contemplated, much less intended, by the City when it entered into this agreement with Jewell. Thus, the context of the Agreed Judgment counsels against the application of *expressio unius est exclusio alterius.*

Considering the context in which it was created, the Agreed Judgment should be understood first and foremost as the resolution of particular allegations against Jewell relating to animals kept by him on his property in Indianapolis. Viewed in

---

1. Among his many accomplishments, Dickerson, who was widely known as "the dean of American Legislative drafting," Gary D. Spivey, *F. Reed Dickerson: The Persistent Crusader, 6 Scribes J. Legal Writing* 149, 149 (1996–97), was also Professor Emeritus of Law at Indiana University Maurer School of Law.

this light, the specific references to § 531–401 and to the prohibitions against allowing his animals to be at large in Indianapolis and against neglecting or mistreating his animals should be understood merely as underscoring the importance of his compliance with those particular provisions that he has heretofore violated. We perceive no indication that the City intended that it be, nor should it be understood as, an agreement on the part of the City to limit its right to enforce against Jewell only those city ordinances mentioned in the Agreed Judgment.

Judgment affirmed.

BAILEY, J., and BROWN, J., concur.