**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Sep 18 2012, 8:46 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**VINCENT M. CAMPITI**
Nemeth, Feeney, Masters & Campiti
South Bend, Indiana

ATTORNEY FOR APPELLEE:

**DANIEL H. PFEIFER**
Pfiefer, Morgan & Stesiak
South Bend, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| IN RE THE ESTATE OF THERESA BURNHAM | ) | |
| | ) | |
| | ) | |
| JAMES BURNHAM, | ) | |
| | ) | |
| Appellant-, | ) | |
| | ) | |
| vs. | ) | No. 71A03-1201-ES-30 |
| | ) | |
| PAULETTE LABEAN, Personal Representative of the Estate of Theresa Burnham | ) | |
| | ) | |
| Appellee-. | ) | |

APPEAL FROM THE SAINT JOSEPH PROBATE COURT
The Honorable Peter Nemeth, Judge
Cause No. 71J01-1012-ES-307

**September 18, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**FRIEDLANDER, Judge**

James Burnham appeals the denial of his petition to take a statutory intestate share of the estate of Theresa Burnham, his estranged wife. Burnham presents the following restated issue for review: Did the trial court commit clear error in determining that Ind. Code Ann. § 29-1-2-15 (West, Westlaw current with all 2012 legislation) divested Burnham of a survivor's share of his late wife's estate?

We affirm.

Burnham married Theresa on February 19 of 2009. In June 2010, Burnham spent two nights in an Elkhart, Indiana hotel with Kelly Kintner, a female coworker. Theresa suspected Burnham and Kintner were having an affair. He voluntarily left the marital home in the middle of July 2010.[1] He explained, "We had our differences, and I didn't want to be around anymore, so I left." *Transcript* at 22. He lived with his mother for "a week or two." *Id*. at 16. On August 1, 2010, he bought a house. He borrowed Kintner's truck to move his property out of the marital residence. Kintner moved in with him almost immediately – in August 2010. They still lived together at the time this appeal was filed. Theresa filed for divorce on August 12, 2010.

In November 2010, while the divorce petition remained pending, Theresa died of a drug overdose. At the time, she had been on medication for menopause and depression. On September 8, 2011, Theresa's estate filed an Estate Petition on Final Account. On September 22, 2011, Burnham filed a Verified Objection to Petition for Final Accounting. Although the

---

[1] Theresa owned the home prior to her marriage with Burnham.

appellate materials do not include a copy of this petition, it is apparent that Burnham sought something that had not been included in the Estate's Petition on Final Account, i.e., a three-quarters share of Theresa's estate pursuant to I.C. § 29-1-2-1 (West, Westlaw current with all 2012 legislation). That provision provides, in relevant part, that the surviving spouse of a person who, like Theresa, died intestate with no surviving issue and at least one surviving parent, shall receive three-fourths of the net estate.

The trial court denied Burnham's request on grounds that, pursuant to I.C. § 29-1-2-15, he was not entitled to a share of Theresa's estate. Section 15 provides as follows: "If a person shall abandon his or her spouse without just cause, he or she shall take no part of his or her estate or trust." Specifically, the court found: "[Burnham] moved out of the home [he shared with Theresa Burnham] in June of 2010 because he and Theresa had their differences and he didn't want to be around anymore." *Appellant's Appendix* at 4. It therefore concluded: "Burnham abandoned his wife without just cause and is not entitled to his statutory intestate share as the surviving spouse pursuant to I.C. § 29-1-2-15." *Id*. Burnham contends upon appeal that the court erred in concluding that he abandoned Theresa within the meaning of I.C. § 29-1-2-15.

Where, as here, the ruling under review was accompanied by findings of fact and conclusions of law entered sua sponte, specific findings control only as to issues they cover, and a general judgment standard applies to any issues upon which the trial court has not made findings. *Jewell v. City of Indianapolis,* 950 N.E.2d 773 (Ind. Ct. App. 2011). We review such findings by determining whether the evidence supports the findings and whether

the findings support the judgment. *Id.* We will reverse only when it is shown to be clearly erroneous, i.e., when it is unsupported by the findings of fact and conclusions entered thereon, *id.,* or when the trial court applies an incorrect legal standard. *Fraley v. Minger,* 829 N.E.2d 476 (Ind. 2005). We defer substantially to the trial court's findings of fact, but we evaluate conclusions of law de novo. *Id.*

We recently had occasion to explore the meaning of "abandoned" in the context of I.C. § 29-1-2-15 in *In re Estate of Patrick*, 958 N.E.2d 1155 (Ind. Ct. App. 2011) *trans. denied.* We reproduce the relevant portion of that discussion here:

> Further, [in *Estate of Calcutt v. Calcutt,* 576 N.E.2d 1288, 1294 (Ind. Ct. App. 1991), *trans. denied,*] we defined "abandonment" in this context as follows: "[T]he act of a husband or wife who leaves his or her consort willfully, without justification either in the consent or wrongful conduct of the other, and with an intention of causing a perpetual separation of the parties...." [](citing *Morehouse v. Koble et al.,* 80 Ind.App. 418, 141 N.E. 254 (1923)). Moreover, in *Hill v. Taylor,* 186 Ind. 680, 117 N.E. 930, 931 (1917), our Supreme Court was again called upon to construe the meaning of the husband descents statute, by then codified at Section 3036, Burns 1914, and held, "if the separation is by mutual consent there is no desertion by either party." As this court explained in *Morehouse v. Koble,* 80 Ind.App. 418, 141 N.E. 254, 255 (1923):

>> The separation of appellant and his wife was a separation by mutual consent. What he did was with her consent, and in our judgment does not amount to an abandonment within the meaning of the [husband descents statute]. Abandonment as used in this statute, and as applied to the instant case, implies a want of consent, an unwillingness, on the part of the wife.

> Taking the foregoing cases together, we conclude that in order to divest Patrick of his survivor's share pursuant to I.C. § 29–1–2–14, the Estate was required to prove that he "left" Melissa. "Left" in this context means abandoned, i.e., left Melissa "willfully, without justification either in the consent or wrongful conduct of [Melissa], and with an intention of causing a perpetual separation of the parties...." *Estate of Calcutt v. Calcutt,* 576 N.E.2d

4

at 1294. Moreover, Patrick did not "leave" Melissa within the meaning of I.C. § 29–1–2–14 if the evidence indicated that the parting was mutually agreed upon. *See Morehouse v. Koble et al.,* 80 Ind.App. 418, 141 N.E. 254.

*In re Estate of Patrick*, 958 N.E.2d at 1159-60.

Summarizing the above principles, I.C. § 29-1-2-15 would not divest Burnham of an intestate share if (1) he and Theresa separated by mutual consent, (2) he was justified in leaving based upon Theresa's consent or wrongdoing, or (3) he did not intend at the time to cause a "lasting separation." *See Estate of Calcutt v. Calcutt,* 576 N.E.2d at 1294. The party seeking to invoke I.C. § 29-1-2-15's application bears the burden of proof, *see Morehouse v. Koble*, 141 N.E. 254 (Ind. Ct. App. 1923), and must establish its case by clear and convincing evidence. *See Hill v. Taylor*, 117 N.E. 930, 931 (Ind. 1917) ("[t]he fact of [abandonment] may be proved by a variety of circumstances leading with more or less probability to that conclusion, but the evidence, as a whole, must be clear and convincing").

Burnham contends the evidence established that he left the house because he was subjected to verbal and physical abuse at Theresa's hands. Burnham did indeed testify that Theresa hit him in public on two separate occasions at a friend's backyard party in the summer of 2009. Yet, Burnham conceded that when the Estate's attorney asked him during an earlier deposition why he had left the marital residence for good in July 2010, he answered only that he and Theresa "had their differences" and he did not want to "be around anymore." *Transcript* at 22. He did not mention the alleged abuse in his response. The evidence of abuse was not so compelling that the trial court's disinclination to view it as a causal factor in Burnham's departure constituted clear error.

5

Burnham also contends that the evidence showed that "he did not want a divorce and that he continually, throughout the course of their marriage, refused to take steps that might hinder their relationship." *Appellant's Brief* at 5. Claiming that he "continued to speak with his wife about reconciliation" during that time and that he continued to contribute financial support, Burnham contends the evidence simply does not support the conclusion that he abandoned Theresa when he moved out in July 2010. *Id.* Perhaps there was evidence that might support his contentions. But, there was countervailing evidence that permitted reasonable inferences leading to the opposite conclusion.

For instance, there was evidence that Burnham's departure from the marital household came at or near the time that he spent two nights in a hotel with another woman – a woman with whom Theresa accused him of having an affair. The evidence further indicated that Burnham waited a mere two weeks to buy his own home and that the same woman with whom he stayed in the hotel moved into his home almost immediately – and has remained there ever since. We understand Burnham's claim that he stayed in a hotel with Kintner in order to protect her from her husband, whom she feared, and that they slept in separate beds. We also note his claim that she moved into his home as a rent-paying boarder and that their relationship did not become romantic until months later – after Theresa's death. These innocent explanations are not so far-fetched as to stray beyond the boundaries of possibility. Surely, however, the evidence presented by Theresa's estate supported an entirely different – and at least equally plausible – conclusion as to Burnham's reasons and intentions for leaving the marital home.

It is not our task upon review to decide what we think the evidence most likely reveals about his reasons for leaving and what they reveal about his intent when he left the marital home with respect to his future with Theresa. Rather, we must decide whether the trial court clearly erred in concluding that the evidence established that when he left, Burnham did so without good cause, without Theresa's consent, and thereby intended to effect a lasting separation from her. *See Estate of Calcutt v. Calcutt,* 576 N.E.2d 1288. After reviewing the evidence, and mindful of the trial court's power to make judgments with respect to witness credibility, we are satisfied that no such error occurred.

Judgment affirmed.

BROWN, J., and PYLE, J., concur.