**ECORP, INC., d/b/a Earthco,**
**Appellant–Defendant,**

v.

**Robert ROOKSBY, Appellee–Plaintiff.**

**No. 49A04–0004–CV–158.**

Court of Appeals of Indiana.

April 19, 2001.

Bradley C. Morris, Michael D. Ramsey, Johnson, Smith, Pence & Heath, LLP, Indianapolis, IN, Attorneys for Appellant.

Lawrence Strodtman, David M. Seiter, L. Strodtman & Associates, Cumberland, IN, Attorneys for Appellee.

**OPINION**

BAKER, Judge

Appellant-defendant Ecorp, Inc., d/b/a Earthco (Earthco) appeals the trial court's grant of partial summary judgment in favor of appellee-plaintiff Robert Rooksby. Specifically, Earthco contends that a genuine issue of material fact exists regarding whether a corporate recapitalization program was completed.

## FACTS

The facts most favorable to Earthco indicate that Rooksby began working as an independent consultant for Earthco in 1996. To take advantage of certain tax credits, Earthco began developing facilities to create a "solid synthetic fuel" from "coal finds." Record at 317, 318. In general, Rooksby's work for Earthco involved designing systems that would "reclaim the finds" and discovering multiple sites for the facilities. R. at 317.

According to the first agreement between the parties, Rooksby was to provide consulting services for a specific processing plant in Utah. On February 3, 1997, Earthco and Rooksby entered into a second agreement, wherein Rooksby assumed responsibility for identifying and introducing coal sites into the Earthco recovery program. In return for each coal site Rooksby identified and introduced, Earthco agreed to pay him $50,000. On March 10, 1997, Earthco and Rooksby entered into a third agreement, wherein Earthco retained Rooksby to serve as "Senior Coal Consultant." Pursuant to the March 10, 1997 agreement, Earthco agreed to pay Rooksby a monthly consulting fee of $7000.

During 1997, Rooksby and James Scott, President of Earthco, discussed making Rooksby an Earthco employee rather than retain him as an independent contractor. Their negotiations culminated in a January 6, 1999 contract for employment, which both men signed. R. at 28–30. According to the contract's terms, Rooksby's employment would be predated to July 1, 1998, and would expire on June 30, 2003. The central dispute arises from the following portion of the employment agreement:

> The monthly salary for this position shall be Fifteen Thousand Dollars commencing on July 1, 1998 and shall be increased by five percent (5%) on each annual anniversary thereafter. The present payments of Seven Thousand ($7,000.00) per month will be continued *until a corporate recapitalization program is completed.* Immediately thereafter, the accrued but unpaid portion of the base salary and the remaining "site bonus" payments will be made to Rooksby.

R. at 28–29 (emphasis supplied). The undisputed facts demonstrate that the term "present payments" refers to the $7000 monthly fee Rooksby was receiving pursuant to the March 10, 1997 agreement. R. at 125. Additionally, the term "site bonus payments" refers to the $135,000 in site bonuses, which Rooksby had earned as Earthco's consultant but were not paid to him as of the date of the contract. R. at 345–46.

On April 15, 1999, Rooksby presented a written demand for his unpaid salary and unpaid site bonuses, totaling $221,500. The unpaid salary amounted to $86,500, while unpaid site bonuses totaled $135,000. Rooksby calculated the salary owed him as the full $15,000 monthly salary that had accrued over nine and one-half months according to the January 6, 1999 employment agreement. From July 1, 1998, until February 28, 1999, Earthco had paid Rooksby $7000 per month. Thus, he demanded the additional $8000 per month over eight months that had accrued according to the employment agreement. And, because Earthco paid Rooksby no monthly salary for March or April 1999, he demanded an additional $22,500.[1] R. at 150.

Following Earthco's refusal to pay, Rooksby filed a complaint against Earthco in July 1999, for the $86,500 in unpaid

---

1. Rooksby tendered the demand letter on April 15, 1999. Presumably, he demanded one and one-half month's salary for March and the first fifteen days in April.

salary. Rooksby also sought to enforce an employee's lien he filed against Earthco in accordance with IND.CODE § 32–8–24–1.[2] Rooksby later filed two amended complaints. In his final amended complaint, Rooksby demanded both the unpaid salary and unpaid site bonuses in Count I of the complaint. In Counts II, III, and IV of the final amended complaint, Rooksby claimed continuing breach of contract, conversion, and constructive fraud, respectively.

On October 18, 1999, Rooksby moved for partial summary judgment, contending that Earthco was in "continuing breach" of the employment contract by failing to pay wages and benefits as they came due. Therefore, he requested a total of $404,250 for damages accrued through September 30, 1999. The day after Rooksby filed his motion for partial summary judgment, Earthco sold four of its coal facilities for a total of $11 million. Money from this sale was placed in an escrow account to pay Earthco creditors. Earthco did not receive any of the $11 million directly.

Determining that there was no just reason for delay, the trial court granted partial summary judgment in favor of Rooksby in the amount of $221,500, representing "$86,500.00 in unpaid compensation through April 15, 1999 and $135,000 in unpaid site bonuses." R. at 540. The trial court did not state upon which count of Rooksby's complaint it was entering partial summary judgment. Earthco now appeals the partial summary judgment.[3]

## DISCUSSION AND DECISION
### I. Standard of Review

Our standard of review of a partial summary judgment is the same as it was for the trial court: whether there is a genuine issue of material fact and whether the moving party was entitled to judgment as a matter of law. *See* Ind. Trial Rule 56(C). All evidence must be construed in favor of the opposing party, and all doubts as to the existence of a material fact must be resolved against the moving party. *Bailey v. Manors Group*, 642 N.E.2d 249, 252 (Ind.Ct.App.1994), *trans. denied.* When reviewing a motion for partial summary judgment, if there are no factual disputes, the court's task is to apply the relevant law to the undisputed facts. *Speedway Int'l Trucks, Inc. v. Rosselle*, 648 N.E.2d 1161, 1162 (Ind.1995).

### II. Interpreting Rooksby's Employment Contract

Earthco contends that the trial court erred in granting partial summary judgment because of the existence of a genuine issue of material fact. More specifically, Earthco contends that the unpaid salary and site bonuses are only payable upon the completion of a "corporate recapitalization" program in accordance with the par-

---

2. The Employee Lien statute provides, in part: (a) Except as provided in subsection (b), the employees of any corporation doing business in Indiana, whether organized under the laws of this state or otherwise, are entitled to have and hold a first and prior lien upon: (1) the corporate property of the corporation; and (2) the earnings of the corporation; for all work and labor done and performed by the employees for the corporation, from the date of the employees' employment by the corporation. A lien under this section shall lie prior to any and all liens created or acquired subsequent to the date of the employment of the employees by the corporation, except as otherwise provided in this chapter.
I.C. § 32–8–24–1.

3. On March 21, 2001, Earthco filed a motion requesting permission from this court to file a motion for relief from judgment pursuant to Ind. Trial Rule 60(B). To the extent that such motion is not mooted by this opinion, Earthco may file the motion with the trial court.

ties' agreement. According to Earthco, a corporate recapitalization program has not been completed. In contrast, Rooksby urges that sale of the four coal sites and subsequent payment of creditors marked the completion of a corporate recapitalization program, making due his unpaid salary and site bonuses.

### A. The General Rules of Contract Interpretation

 Addressing the parties' contentions, we note that the primary purpose in contract construction is to ascertain and give effect to the parties' mutual intent. *Hutchinson, Shockey, Erley & Co. v. Evansville–Vanderburgh County Bldg. Auth.*, 644 N.E.2d 1228, 1231 (Ind.1994). When a court is asked to interpret an agreement, it is necessary for the court to examine the parties' intent when they wrote the agreement. *Kelly v. Smith*, 611 N.E.2d 118, 121 (Ind.1993). Absent ambiguity, the terms of a contract will be given their plain and ordinary meaning. *George Uzelac & Assocs., Inc. v. Guzik*, 663 N.E.2d 238, 240 (Ind.Ct.App.1996), *trans. denied.* The terms of a contract are not considered ambiguous because the parties dispute the proper interpretation of the terms. *Id.*

### B. Ambiguous Technical Terms

 An ambiguity exists only where reasonable people could come to different conclusions about the contract's meaning. *Ruff v. Charter Behavioral Health Sys. of Northwest Indiana, Inc.*, 699 N.E.2d 1171, 1176 (Ind.Ct.App.1998), *trans. denied.* If a contract is ambiguous solely because of the language used in the contract and not because of extrinsic facts, then its construction is purely a question of law for the courts. *Fresh Cut, Inc. v. Fazli*, 650 N.E.2d 1126, 1133 (Ind.1995). However, where a contract is ambiguous and the meaning may need to be determined by extrinsic evidence, then such a construction is a matter for the factfinder. *Id.* Our

sister states apply this general rule when dealing with technical words or terms of art used in contracts. *See Les–Bil, Inc. v. Gen. Waterworks Corp.*, 256 Ark. 905, 511 S.W.2d 166, 169 (1974) ("[W]hen a technical term is used in a sense other than the ordinary meaning of the word[,] testimony is admissible to explain the meaning of the term and the question may be submitted to the trier of fact to determine in what sense the term was used."); *Timberline Equip. Co. v. St. Paul Fire and Marine Ins. Co.*, 281 Or. 639, 576 P.2d 1244, 1246 (1978) ("[I]f language of the contract is ambiguous, or if technical words, local phrases or terms of art are used and evidence is properly admitted showing meaning, the question becomes one of fact."); *Brown v. Poston*, 44 Wash.2d 717, 269 P.2d 967, 969 (1954) ("The subject matter of the contract was technical in nature, and many of the terms and drawings included in the plans and specifications could not be interpreted intelligently without reference to testimony to explain them."); *see also* 17A Am.Jur.2d *Contracts* § 363, at 385–86 (1991) (collecting cases under heading "Technical words").

### C. "Recapitalization"

In examining Rooksby's employment contract, no clear meaning of "recapitalization" emerges from the document's four corners. The parties have not cited any Indiana case law or statute defining recapitalization, nor has our research uncovered any. The term has appeared in at least two U.S. Supreme Court decisions applying the antecedent to 26 U.S.C. § 368, which lists certain corporate transactions exempt from taxation. In *Helvering v. Southwest Consolidated Corp.*, the Court defined recapitalization as a "reshuffling of a capital structure within the framework of an existing corporation." 315 U.S. 194, 202, 62 S.Ct. 546, 86 L.Ed. 789 (1942). The Court has also defined recapitalization as "a new form of the previous partic-

ipation in the enterprise, involving no change of substance of rights and relations of the interested parties one to another or to the corporate assets." *Bazley v. Commissioner of Internal Revenue*, 331 U.S. 737, 740, 67 S.Ct. 1489, 91 L.Ed. 1782 (1947). However, the *Bazley* court carefully avoided fashioning an abstract definition of recapitalization. Instead, it defined the term within the context of the Internal Revenue Code provision at hand. *Id.* at 741, 67 S.Ct. 1489.

Likewise, state courts dealing with the term "recapitalization" in contracts are careful to define the term in the context of the parties' intent. In a Delaware decision, the supreme court addressed a stock certificate provision granting preferred shareholders a beneficial adjustment in their stock after recapitalization. *Wood v. Coastal States Gas Corp.*, 401 A.2d 932, 939 (Del.1979). The *Coastal* court acknowledged that the circumstances of that case may have fit under the general definition of recapitalization, which is, "a 'fundamental realignment of relationships amongst a company's securities' or a 're-shuffling of the capital structure.'" *Id.* (citing *Helvering,* 315 U.S. 194, 62 S.Ct. 546). However, the stock certificate provision contemplated more specific circumstances as a recapitalization that would trigger the beneficial adjustment. *Id.* (noting that the general definition of recapitalization was "not the test," rather "[t]he critical question concerns what [wa]s said in the contract"); *see also Shoffner v. Woodward,* 195 Ga.App. 778, 394 S.E.2d 921, 924 (1990) ("[W]e will not attempt an abstract definition of recapitalization, but will ascertain the meaning of the term in the context in which it is used and in accordance with the parties' intention.").

### III. Specific Application in Light of Partial Summary Judgment

■ Turning to the facts of the instant case, Earthco maintains that a recapital-ization involves "an arrangement whereby stock, bonds, or other securities of a corporation are adjusted as to type, amount, income or priority, or as a realignment of the capital structure in the framework of an existing corporation." Appellant's brief at 12 (citing *Black's Law Dictionary* (5th ed.1983)). According to Scott, Earthco's president, the sale of the four facilities was an "asset sale" that "did not involve any new injection of capital or new shareholders, did not involve any adjustment as to the type, amount, income, or priority of Earthco's stock, and did not involve any realignment of the capital structure within Earthco." Appellant's brief at 14.

Earthco has presented a genuine issue of material fact, that is, the parties' intent in agreeing to pay Rooksby's accrued salary and site bonuses after a "recapitalization program" had been completed. Given the technical nature of the term used, reasonable people could arrive at different conclusions about the meaning of "recapitalization" in Rooksby's employment contract. In other words, an ambiguity exists in the employment contract that can only be resolved in light of extrinsic evidence. As such, the trial court should have employed "[r]ules of contract construction and extrinsic evidence ... to determine and give effect to the parties' reasonable expectations." *See Fresh Cut,* 650 N.E.2d at 1133. Therefore, under these circumstances, resolution of the issue was inappropriate for summary judgment. *See id.*

Judgment reversed and remanded for further proceedings consistent with this opinion.

SHARPNACK, C.J., and SULLIVAN, J., concur.