ROY A. MILLER & SONS, INC.,
Appellant–Plaintiff,

v.

INDUSTRIAL HARDWOODS CORPO-
RATION, Susan C. Lyttle, Trustee
B.E.R.J. Trust and Len Eckstein
Roofing, Inc., Appellees–Defendants.

No. 69A04–0204–CV–173.

Court of Appeals of Indiana.

Oct. 2, 2002.

Frank G. Kramer, David M. King, Ewbank Kramer & Dornette, Lawrenceburg, IN, Attorneys for Appellant.

Clay M. Kellerman, Batesville, IN, Attorney for Appellee.

## OPINION

SHARPNACK, Judge.

Roy A. Miller & Sons, Inc. ("Miller") appeals the trial court's judgment in favor of Len Eckstein Roofing, Inc. ("Eckstein").[1] Miller raises two issues, which we restate as:

I. Whether the trial court denied Miller due process when it entered judgment against Miller prior to receiving Miller's timely filed proposed findings and conclusions; and

II. Whether the trial court committed clear error when it interpreted the contract phrase, "2½% Service Charge After 10th Of The Following Month," to mean two and one-

half percent interest every month, rather than a one time charge.

We affirm.

The facts most favorable to the judgment follow. Industrial Hardwoods Corporation ("Industrial") hired Miller to perform construction improvements. Miller then hired Eckstein as a subcontractor. When Industrial stopped making payments to Miller, Miller filed a mechanic's lien against the real estate and filed a foreclosure action against Industrial. Miller named Eckstein as a party to its action against Industrial because Eckstein was one of Miller's subcontractors. Eckstein filed a counterclaim against Miller for payments for the work Eckstein performed pursuant to its subcontract with Miller.

At the time of the trial, Miller owed Eckstein $43,161.67 for work that had been completed. At trial, Miller did not contest the principal amount it owed to Eckstein. Rather, Miller contested the amount of interest due.

Miller requested that the trial court enter special findings of fact and conclusions thereon pursuant to Ind. Trial Rule 52. The trial court requested that the parties submit proposed findings and conclusions by December 17, 2001. On December 10, 2001, Miller's counsel requested an extension of time in which to submit the proposed findings. The trial court granted that request, giving Miller until December 31, 2001, to file proposed findings and conclusions. Miller filed its proposed findings on December 28, 2001. When Miller filed its proposed findings, it learned that the trial court had entered judgment for Eckstein on December 21, 2001. The trial court's judgment ordered Miller to pay Eckstein $43,161.67 in principal plus

---

1. Ind. Appellate Rule 46(A)(10) requires an appellant to include a copy of the appealed judgment or order in the appellant's brief. This directive was not followed in this case. We urge the parties to follow this directive in the future.

$20,290.63 in interest, which amount corresponds to a monthly interest rate of 2½ percent. Because the trial court entered judgment prior to receiving Miller's proposed findings, Miller filed a motion to correct error. The trial court held a hearing on the motion to correct error and then denied Miller's motion.

■ Miller appeals from the trial court's denial of its motion to correct error. A trial court is vested with broad discretion to determine whether it will grant or deny a motion to correct error. *Precision Screen Machines, Inc. v. Hixson,* 711 N.E.2d 68, 70 (Ind.Ct.App.1999). The trial court has abused its discretion only if its decision is clearly against the logic and effect of the facts and circumstances before the court or the reasonable inferences therefrom. *Id.* The trial court's decision comes to us clothed in a presumption of correctness, and the appellant has the burden of proving to us that the trial court abused its discretion. *Id.* In making our determination, we may not reweigh the evidence or judge the credibility of witnesses. *Id.* Instead, we look at the record to determine if: "(a) the trial court abused its judicial discretion; (b) a flagrant injustice has been done to the appellant; or (c) a very strong case for relief from the trial court's [order] ... has been made by the appellant." *Id.* Within this framework, we review the two issues that Miller raises.

I.

■ The first issue is whether the trial court denied Miller due process when it entered judgment against Miller prior to receiving Miller's timely filed proposed findings and conclusions. The Fourteenth Amendment to the United States Constitution provides that "no person shall be deprived of life, liberty, or property without due process of law." U.S. CONST. amend. XIV. We have previously stated that the elements of due process in a civil proceeding cannot be defined with precision.

*Anderson Fed. Sav. & Loan Ass'n v. Guardianship of Davidson,* 173 Ind.App. 549, 364 N.E.2d 781, 784 (1977). However, due process clearly requires a fair opportunity to be heard. *Neill v. Ridner,* 153 Ind.App. 149, 155, 286 N.E.2d 427, 430–431 (Ind.Ct.App.1972). An opportunity to be heard includes the right to present evidence, confront adverse witnesses, make arguments, and receive judicial findings based upon the evidence and arguments. *Anderson Fed.,* 364 N.E.2d at 784–785. In addition, when the resolution of a material issue in a case requires a determination as to the credibility of witnesses and the weight of testimony, "due process requires that the trier of fact hear all of the evidence necessary to make a meaningful evaluation." *Farner v. Farner,* 480 N.E.2d 251, 257 (Ind.Ct.App.1985).

Miller argues that it was denied due process because the trial court entered judgment prior to receiving Miller's proposed findings and conclusions. To support its argument, Miller cites two cases decided by this court in which an appellant was denied due process by the trial court's failure to hear the appellants' summary judgment arguments prior to granting summary judgment for the opposing party. *See* Appellant's Brief at 7–8 (citing *Chandler v. Dillon,* 754 N.E.2d 1002 (Ind.Ct. App.2001) & *Harder v. Estate of Rafferty,* 542 N.E.2d 232 (Ind.Ct.App.1989)). However, unlike in *Chandler* and *Harder,* wherein the parties had no opportunity to present evidence or argument to the trial court prior to the entry of judgment against them, Miller had the opportunity to present its evidence and arguments to the trial court at trial on December 3, 2001. Consequently, those two cases do not control the outcome here.

■ Rather, for Miller to have received due process, it had to have the opportunity to present evidence, confront

adverse witnesses, make arguments, and receive judicial findings based upon the evidence and arguments. *Anderson Fed.,* 364 N.E.2d at 784–785. Miller had the opportunity to do those things. Consequently, Miller received due process. *See, e.g., Morgan v. Cooper,* 415 N.E.2d 729, 732 (Ind.Ct.App.1981) (holding that appellant was not denied due process when the trial court granted appellee's motion to correct error prior to receiving appellant's response to appellee's motion to correct error); *cf. Anderson Fed.,* 364 N.E.2d at 785–786 (holding that appellant's right to due process was violated when appellant was never allowed to present any evidence). Although proposed findings may assist a trial court, it is the responsibility of the trial court to make the findings and conclusions. *See Maloblocki v. Maloblocki,* 646 N.E.2d 358, 361 (Ind.Ct.App. 1995). Where the trial court enters findings after a hearing, as here, there is no denial of due process because the court does not wait for proposed findings. The trial court did not abuse its discretion when it denied Miller's motion to correct error as to this issue.

## II.

■■■■■ The second issue is whether the trial court committed clear error when it interpreted the phrase, "2½% Service Charge After 10th Of The Following Month," to mean two and one-half percent interest every month, rather than a one time charge. When a party requests that the trial court enter special findings of fact and conclusions thereon, we will not set aside the judgment unless it is clearly erroneous. Ind. Trial Rule 52(A). To determine whether a judgment is clearly er-

roneous, we engage in a two-tiered standard of review. *Keybank Nat'l Ass'n v. NBD Bank,* 699 N.E.2d 322, 325 (Ind.Ct. App.1998). First we must determine whether the evidence supports the findings, and then we must determine whether the findings support the judgment. *Id.* Findings are clearly erroneous if they are unsupported by the evidence in the record that is most favorable to the judgment and the reasonable inferences therefrom. *Id.* at 326. When reviewing the findings, we may neither reweigh the evidence nor reassess the credibility of the witnesses. *Id.* In addition, we may affirm the trial court's judgment on any theory supported by the findings. *Mitchell v. Mitchell,* 695 N.E.2d 920, 923 (Ind.1998).

■■■■■ The trial court determined that the invoice phrase "2½% Service Charge After 10th Of The Following Month" was the applicable monthly interest rate to be paid by Miller on the outstanding balance owed to Eckstein. Exhibit 3. Miller argues that the trial court's determination was incorrect for three reasons.[2] First, Miller claims that the 2½ percent phrase unambiguously means a one-time service charge of 2½ percent. Second, Miller argues that if the phrase is ambiguous, it should be interpreted to mean a one-time service charge. Third, Miller claims that the award of 2½ percent monthly is unconscionable when Ind.Code § 24–4.6–1–103 provides for a prejudgment interest rate of eight percent per year.

■■■■■ We determine the parties' intent when entering a contract from their expressions within the four corners of the written instrument. *Samar, Inc. v. Hof-*

---

**2.** As the last sentence of this argument section, Miller states: "The phrase '2½% service charge after the 10th of the following month' was not agreed upon by the parties and Miller objected the first time [it] was clear to him how Eckstein was interpreting the service

charge." Appellant's Brief at 11. However, Miller did not supplement this statement with citations to authority or to the record. Consequently, if Miller was attempting to raise another argument, such argument is waived. *See* Ind. Appellate Rule 46(A)(8)(a).

*ferth*, 726 N.E.2d 1286, 1290 (Ind.Ct.App. 2000), *trans. denied.* If the language is clear and unambiguous, we give that language its "plain, usual, and ordinary meaning." *Id.* If, on the other had, the language is ambiguous, then we must determine its meaning by extrinsic evidence. *Id.* "An ambiguity exists only where reasonable people could come to different conclusions about the contract's meaning." *Ecorp, Inc. v. Rooksby*, 746 N.E.2d 128, 131 (Ind.Ct.App.2001). A contract term is not ambiguous merely because the parties disagree about the term's meaning. *Id.*

Here, the phrase at issue appears on the top of the invoices sent from Eckstein to Miller. The phrase is "2½% Service Charge After 10th Of The Following Month." Exhibit 3. The trial court interpreted this term to mean a monthly interest rate of 2½ percent. Eckstein claims that this is the correct interpretation. However, Miller argues that the phrase means that Eckstein would charge a one-time service charge after the tenth day of the first month after the invoice was sent.

■ We agree with Miller that the charge is unambiguously a service charge rather than an interest rate. A service charge is an economic disincentive provided to discourage late payments of amounts due for products or services provided by one party to another. *See* BLACK'S LAW DICTIONARY (6th ed.1990) (a "credit service charge" includes both charges payable by the buyer "incident to the extension of credit," such as "time price differential, service, carrying or other charge, ... premium or other charge for any guarantee or insurance protecting the seller against the buyer's default" and charges for investigating the credit-worthiness of the buyer or other commissions). An interest rate, on the other hand, is a monthly fee imposed upon the remaining balance of money loaned from one party to another. *See* BLACK'S LAW DICTIONARY (6th ed.1990) 813

(an interest rate is the "percentage of an amount of money which is paid for its use for a specified time"). Because the invoice phrase clearly indicates that the charge is a service charge, we may not construe it to mean something else.

■ However, regardless of whether the fee is a service charge or an interest rate, we disagree with Miller's claim that the trial court improperly found that charge would occur monthly. Rather, we believe that "after 10th of the following month" clearly indicates that the charge will occur after the tenth day of every following month unless payment occurs. This conclusion is compelled by the fact that the purpose of such fees, be they service charges or interest rates, is to encourage debtors to pay their bills in a timely manner. If such fees were a one-time charge, a debtor would have no further incentive to pay its debt after the initial fee was imposed. The trial court's decision to impose a 2½ percent fee for each month that Miller had not paid was not clearly erroneous.

■ In addition, even if it could be argued that the phrase "after 10th of the following month" was ambiguous, the evidence does not compel an interpretation different from the one that we reach. When a contract term is ambiguous, we must use the "rules of contract construction and extrinsic evidence ... to determine and give effect to the parties' reasonable expectations." *Id.* (quoting *Fresh Cut, Inc. v. Fazli*, 650 N.E.2d 1126, 1133 (Ind.1995)). When the construction of a contract is based upon extrinsic evidence, "the construction is a matter for the factfinder." *Id.* Ambiguities in the construction of the contract should be construed against the drafting party. *Eckart v. Davis*, 631 N.E.2d 494, 498 (Ind.Ct.App. 1994).

Eckstein's treasurer, Vanessa Zins, testified that the invoice "says clearly" that they will charge 2½ percent interest after the tenth of the month. Transcript at 19–20. Zins also testified that she sent a number of monthly invoices to Miller containing the phrase at issue. In addition, Zins faxed a copy of her customer ledger for Miller's account to Miller, and that ledger included monthly finance charges of 2½ percent. Miller paid four of the invoices without ever objecting to the phrase. Elmer Miller, the owner of Miller, testified that a 2½ percent charge is not customary in the trade because in his forty-three years in the business he has never seen a charge that high. However, Miller did not testify that he thought the phrase on the invoice meant something other than a 2½ percent charge per month. Based upon this evidence, the trial court's determination that the phrase meant a monthly charge of 2½ percent was not clearly erroneous. *See, e.g., Weisman v. Hopf–Himsel, Inc.,* 535 N.E.2d 1222, 1234 (Ind.Ct.App.1989) (holding that the evidence was sufficient to support the trial court's determination that the interest rate on the invoice was applicable when the appellant presented no evidence to contest the validity of the term), *disapproved on other grounds by Songer v. Civitas Bank,* 771 N.E.2d 61 (Ind.2002).

 Finally, contrary to Miller's final contention, the trial court's interpretation does not lead to an unconscionable result. Miller claims that an annual interest rate of thirty percent is unconscionable and that the trial court should apply the eight percent statutory rate provided in Ind.Code § 24–4.6–1–103. First, as noted above, the phrase "2½% Service Charge After 10th Of The Following Month" reflects a service charge imposed to promote prompt payment, not an interest rate for money borrowed by agreement. Consequently, we do not believe that the statutory rate set by Ind.Code § 24–4.6–1–103

controls this situation. However, even if the statute were applicable, it would not prohibit the parties from specifying an appropriate rate to be applied in place of the statutory rate. *See id.* (applying the agreed eighteen percent interest rate rather than the statutory eight percent rate). Here, the invoice provided a rate. Miller provided neither argument on appeal nor evidence in the trial court suggesting that it did not accept that rate. *See infra* n. 2. In addition, at trial, Miller presented no evidence that the rate was wrong; rather it presented evidence that the rate may have been higher than the customary level in the construction business. Consequently, the statute did not compel the trial court to award Eckstein the eight percent prejudgment interest rate provided by the statute rather than the thirty percent service charge rate provided on the invoices. *See Weisman,* 535 N.E.2d at 1234. Because the trial court's judgment was not clearly erroneous, the trial court did not abuse its discretion when it denied Miller's motion to correct error.

For the foregoing reasons, we affirm the judgment of the trial court.

Affirmed.

FRIEDLANDER, J., and NAJAM, J. concur.