

FILED

Jul 08 2015, 8:42 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Morris A. Sunkel
Harris Welsh & Lukmann
Chesterton, Indiana

ATTORNEY FOR APPELLEES

Elizabeth A. Flynn
Michigan City, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In Re: The Matter of the Supervised Administration of the Estate of Wayne Lewis Stayback, Deceased, | July 8, 2015 |
| | Court of Appeals Case No. 46A03-1410-ES-378 |
| Joseph Stayback, | |
| *Appellant-Respondent,* | Appeal from the LaPorte Superior Court |
| v. | The Honorable Kathleen B. Lang, Judge |
| Jeffrey Stayback and Julie Warnke, | Cause No. 46D01-1110-ES-35 |
| *Appellees-Petitioners.* | |

**Najam, Judge.**

## Statement of the Case

Wayne Lewis Stayback, deceased, was the father of three children: Joseph Stayback, Jeffrey Stayback, and Julie Warnke. In 2010, Wayne created the

Wayne Lewis Stayback Irrevocable Living Trust ("the Trust"), the corpus of which consisted of approximately seventy-five acres of real property in LaPorte County ("the property") and some personal property. After Wayne died in 2011, Jeffrey and Julie filed a joint petition to remove Joseph as trustee of the Trust. Joseph filed a motion to dismiss that petition, and he requested fees and expenses. Jeffrey and Julie subsequently filed a motion to dissolve and terminate the Trust. Following a hearing on all pending motions, the trial court denied Joseph's motion to dismiss and motion for fees and expenses, and the court denied Jeffrey and Julie's motion to dissolve and terminate the Trust. Joseph appeals and presents two issues for our review:

1. Whether the trial court erred when it concluded that the Trust shall distribute to Joseph, Jeffrey, and Julie income generated by billboards located on the property.

2. Whether the trial court abused its discretion when it denied Joseph's motion for fees and expenses.

Jeffrey and Julie cross-appeal and present two issues for our review, which we consolidate and restate as whether the trial court erred when it denied their petition to dissolve and terminate the Trust.

We affirm in part and reverse in part.

## Facts and Procedural History

In approximately 1990, Wayne and Joseph started a business together operating a paintball course on the seventy-five acre property Wayne owned in LaPorte

County. The business was very successful and, over the years, Wayne and Joseph expanded the operation from three playing fields to eleven playing fields. At some point, Joseph took over sole ownership of the paintball business, which became known as Sherwood Forest Adventure Games. But Wayne continued his daily involvement in running the business. Wayne also leased a portion of the property to Burkhart Advertising Corporation ("Burkhart"), which erected billboards on the leased property.[1]

[5] On May 3, 2010, Wayne executed the Trust, which provided in relevant part as follows:

> *ARTICLE 3*
>
> *DISTRIBUTION OF INCOME AND PRINCIPAL*
>
> 3.01 *Use of Trust Income During the Lifetime of Wayne Lewis Stayback*
>
> During the lifetime of Wayne Lewis Stayback of LaPorte County, Indiana, the Trustee, [Joseph,] in his . . . sole discretion, as defined hereafter, may use any portion or all of the income and/or principal of the Trust for the use or benefit of any purpose the Trustee deems necessary or advisable. Under no circumstances may Trustee use any of the assets of Trustee to benefit Grantor, Wayne Lewis Stayback.
>
> 3.02 *Use of Trust Real Estate*:

---

[1] Wayne had entered into four contracts with Burkhart to lease four spaces on the property. Appellant's App. at 51.

During the lifetime of Joseph Stayback, so long as he wishes, he shall have the right to operate his business known as Sherwood Forest Adventure Games, or other business name as Joe Stayback desires, on any trust[-]owned real estate and to retain all profits and/or losses of said businesses so as [sic] long as he desires. The Trust shall be responsible to pay yearly taxes regarding said property.

3.03 *Distribution of Undistributed Income and/or Principal after the Death of Wayne Lewis Stayback*

Upon the death of Wayne Lewis Stayback, the TRUSTEE shall divide the property of the Trust (including the proceeds of any insurance policy payable on the death of Wayne Lewis Stayback), into as many equally [sic] shares as shall be required to provide and make distribution as follows:

1. Joseph Stayback, for as long as he desires, shall be able [to] operate his business on any real estate owned by the Trust and retain all income and losses therefrom.

2. The rest, residue and remainder of my Trust, including real estate subject to paragraph 1 herein above shall be divided equally among Joseph Stayback, Jeffrey Stayback and Julie Warnke, who survive me.

Joint Ex. 1.

[6] By 2011, Joseph had incurred "substantial obligations for sales tax to the Indiana Department of Revenue" related to the paintball business. Appellant's Br. at 5. Accordingly, Wayne started a new business known as Sherwood Rentals, and Wayne "ran the paintball business through [that company] prior to his death[.]" Tr. at 63. In turn, Joseph "formed another entity [called

Sherwood Paintball Maintenance] to continue doing exactly the same thing as [he] had done[ prior to Wayne's death in September 2011.]" *Id.* After Wayne's death in September 2011, Joseph's fiancée, Kathy Love, created a business called Sherwood Paintball, Inc. Kathy took over responsibility for running the same aspects of the paintball business that Wayne had run during his lifetime, such as admissions and concessions. Joseph continued his work building and maintaining the courses.

[7] Wayne's will included a pour-over provision, whereby any undistributed assets of his estate were to be placed in the Trust for distribution. One such asset included the lease agreements with Burkhart. After Wayne's death, Joseph "requested that the lease payments from Burkhart [for the billboards] be made to him as Trustee of the [Trust]." Appellant's App. at 55. Joseph used some of that income, which totaled approximately $12,000 annually, to pay the real estate taxes on the property.

[8] On October 12, 2011, Joseph was appointed Personal Representative of the Supervised Estate of Wayne Lewis Stayback. On May 4, 2012, Jeffrey, as "remainderman beneficiary," filed a Verified Petition for Accounting, Report, and Docketing of the Trust. *Id.* at 20. On August 7, Jeffrey filed a Verified Petition for Estoppel of Burkhart Advertising Corporation's Payments to Joseph Stayback. And on September 26, Jeffrey and Julie filed a Joint Verified Petition to Remove Joseph Stayback as Trustee and Personal Representative. On November 7, Joseph filed a motion to dismiss Jeffrey and Julie's petition to

remove him as trustee. On November 30, Jeffrey and Julie filed a Motion to Dissolve and Terminate Trust.

[9] Following a hearing on all pending motions on July 21, 2014, the trial court entered the following order:

> 1. This case involves the interpretation of the language in the Irrevocable Living Trust executed by Wayne Lewis Stayback on May 3, 2010.
>
> 2. There are three heirs, [Joseph, Jeffrey, and Julie]. Joseph was appointed Personal Representative and Trustee.
>
> 3. Section 3.02 *Use of Trust Real Estate* states that during the lifetime of Joseph Stayback, so long as he wishes, he shall have the right to operate his business known as Sherwood Forest Adventure Games, or other business name as Joseph Stayback desires, on any trust-owned real estate, and to retain all profits and/or losses of said business so long as he desires. The Trust shall be responsible to pay yearly taxes regarding said property. *This section clearly expresses the trustor's intention that Joseph Stayback operate a paintball business on the property for as long as he desires.*
>
> 4. Section 3.03 *Distribution of Undistributed Income and/or Principal after the Death of Wayne Lewis Stayback*—This section is the center of the conflict between the parties. Upon the death of Wayne Lewis Stayback, the Trustee shall divide the property of the Trust (including the proceeds of any insurance policy payable on the death of Wayne Lewis Stayback), into as many equally [sic] shares as shall be required to provide and make distribution as follows:
>
>> A. Joseph Stayback, for as long as he desires, shall be able [to] operate his business on any real estate

owned by the Trust and retain all income and losses therefrom.

B. The rest, residue and remainder of my Trust, including real estate subject to paragraph 1 herein above shall be divided equally among Joseph Stayback, Jeffrey Stayback and Julie Warnke, who survive me.

4. [sic] The language in sections 3.02 and 3.03 is confusing and somewhat contradictory. Just as it is clear in section 3.02 that the Trustor intended Joseph to have the ability to run the paintball business for as long as he desired, section 3.03 (1) clearly states that Joseph has the right to operate his business on any real estate owned by the trust. Section 3.03 (2) indicates that the rest, residue and remainder of the trust, including real estate subject to 3.03 (1) be divided equally between Joseph, Jeffrey, and Julie. *The intention of the Trustor in both section 3.02 and 3.03 is to allow Joseph to use the real property now within the Trust for the paintball business*. Although there is some question about the structure of the current business organization, the evidence supports that there is an ongoing paintball business on the property. The real property will continue to be held in the Trust until Joseph no longer operates a paintball business. Joseph will be considered operating a paintball business as long as he is a named owner of a corporate entity involved with the operation of a paintball business on the property.

5. [sic] Income is generated from . . . lease[s] with Burkhart Signs. *These contracts are not within the Trust*. Any income as a result of this contractual relationship should be distributed equally between Joseph, Jeffrey, and Julie.

The Court orders as follows:

1.  Motion to Dismiss proceedings filed by Joseph Stayback as Trustee and Personal Representative of the Estate of Wayne Lewis Stayback.

**Motion to Dismiss is denied.**

2.  Motion for Fees and Expenses filed by Joseph Stayback as Trustee and Personal Representative of the Estate of Wayne Lewis Stayback.

**Motion for Fees and Expenses is denied.**

3.  Motion to Dismiss and Motion to Dissolve and Terminate Trust filed by Jeffrey Stayback and Julie Warnke.

**Motion to Dissolve and Terminate Trust is denied.**

*Id.* at 7-8 (some emphases added). This appeal and cross-appeal ensued.

# Discussion and Decision

### *Issue One: Income from Billboard Leases*

[10] Joseph first contends that the trial court erred when it concluded that the billboard contract is not part of the Trust and ordered that the income from that contract be distributed equally among Joseph, Jeffrey, and Julie. The trial court entered findings of fact and conclusions thereon sua sponte. Our standard of review under this circumstance is well settled: specific findings control only as to issues they cover, and a general judgment standard applies to any issues upon which the trial court has not made findings. *Jewell v. City of Indianapolis*, 950 N.E.2d 773 (Ind. Ct. App. 2011). We review such findings by determining whether the evidence supports the findings and whether the findings support the

judgment. *Id.* We will reverse only when the judgment is shown to be clearly erroneous, i.e., when it is unsupported by the findings of fact and conclusions entered thereon, or when the trial court applies an incorrect legal standard. *Id.*; *Fraley v. Minger*, 829 N.E.2d 476, 482 (Ind. 2005). We defer substantially to the trial court's findings of fact, but we evaluate conclusions of law de novo. *Jewell*, 950 N.E.2d at 777.

[11] The interpretation of a will or trust is a question of law for the court. *Univ. of S. Ind. Found. v. Baker*, 843 N.E.2d 528, 531 (Ind. 2006). We apply the same rules of construction of a contract to determine whether the language in a trust is ambiguous. The primary purpose of the court in construing a trust instrument is to ascertain and give effect to the settlor's intention. *Id.* Indiana follows the four corners rule that extrinsic evidence is not admissible to add to, vary, or explain the terms of a written instrument if the terms of the instrument are clear and unambiguous. *Id.* Accordingly, where a trust is clear and unambiguous, the court must give effect to the trust's clear meaning without resort to extrinsic evidence. *Id.*

[12] If, on the other hand, the language is ambiguous, then we must determine its meaning by extrinsic evidence. *Roy A. Miller & Sons, Inc. v. Indus. Hardwoods Corp.*, 775 N.E.2d 1168, 1173 (Ind. Ct. App. 2002). An ambiguity exists only where reasonable people could come to different conclusions about the contract's meaning. *Id.* A contract term is not ambiguous merely because the parties disagree about the term's meaning. *Id.* When the construction of a

contract is based upon extrinsic evidence, the construction is a matter for the factfinder. *Fresh Cut, Inc. v. Fazli*, 650 N.E.2d 1126, 1133 (Ind. 1995).

[13] The parties do not dispute that, because Wayne had executed a pourover will,[2] the billboard leases became Trust assets upon Wayne's death. We agree and hold that the trial court erred when it concluded that the billboard leases were "not within the Trust." Appellant's App. at 8. However, the parties dispute whether, under the terms of the Trust, that asset should have been distributed to Joseph, Jeffrey, and Julie or whether it should have been kept in the Trust for Joseph's benefit. Because the trial court erred when it concluded that the leases were not a part of the Trust, we review this issue de novo.

[14] It is well settled that the use of the term "life estate" is not necessary to create a life estate where, as here, the intention of the grantor to create a life estate is expressed by equivalent and appropriate language. *Long v. Horton*, 126 Ind. App. 651, 133 N.E.2d 568, 572 (1956). Section 3.02 of the Trust provides that, "[d]uring the lifetime of Joseph Stayback, so long as he wishes, he shall have the right to operate his business known as Sherwood Forest Adventure Games, or other business name as Joe Stayback desires," on Trust-owned property. Joint Ex. 1. And Section 3.03 of the Trust provides that, upon Wayne's death, Joseph shall divide the property of the Trust as follows: first, "for as long as he desires," Joseph is able to operate his business on real estate owned by the Trust

___

[2] A pourover will is a "will giving money or property to an existing trust." Black's Law Dictionary 1834 (10th ed. 2014).

"and retain all income and losses therefrom"; second, the rest, residue, and remainder of the Trust, including the real estate subject to the first paragraph, shall be divided equally among Joseph, Jeffrey, and Julie. *Id.* We hold that Section 3.02 and the first numbered paragraph of Section 3.03 conveyed a life estate in the property to Joseph, subject to the condition that he continue to operate a paintball business there. *See, e.g.*, *Gladden v. Jolly*, 655 N.E.2d 590, 592 (Ind. Ct. App. 1995) (holding will provision granting Gladden right to live in decedent's house during Gladden's life subject to conditions created life estate in the residence).

[15] As we explain below, we agree with the trial court that Joseph is operating a paintball business on the property. Accordingly, Joseph is fulfilling the condition required to maintain a life estate in the property, subject to his continued operation of a paintball business. A life estate entitles the holder to the possession of real property. *See, e.g.*, *Krieg v. Hieber*, 802 N.E.2d 938, 946 (Ind. Ct. App. 2004). And the right to the rents and profits of the real estate follows the right to possession. *Lockridge v. Citizens Trust Co. of Greencastle*, 110 Ind. App. 253, 37 N.E.2d 728, 731 (1941). We hold that Joseph is entitled to the income generated by the billboard leases for the duration of his life estate. Thus, the trial court erred when it ordered that the income from the billboard leases be distributed equally among Joseph, Jeffrey, and Julie.

### Issue Two: Motion for Fees and Expenses

[16] Joseph contends that the trial court abused its discretion when it denied his motion for fees and expenses. Joseph maintains that he had never filed any

such motion "as either personal representative nor as trustee." Appellant's Br. at 12. Accordingly, Joseph asserts that the trial court's order denying such fees was entered *sua sponte*, which, he alleges, is improper. Joseph states that "the trial court did not hold an evidentiary hearing or hear any evidence regarding Joseph's personal representative or trustee fees because no Motion or request for those fees was made to the trial court." *Id.* at 13.

[17] But Jeffrey and Julie point out that, in his November 7, 2012, motion to dismiss, Joseph requested fees and expenses in his prayer for relief. And Joseph's motion to dismiss, including the request for fees and expenses, was at issue during the July 21, 2014, hearing. Indeed, in his opening statement, Joseph's counsel requested that his fees "be paid by [Jeffrey and Julie]." Tr. at 10. Moreover, Joseph testified that he had "paid to this date in legal fees, because of the suit" approximately $30,000. *Id.* at 65. Thus, Joseph's contentions that he neither requested fees nor presented evidence of his fees are without merit.

[18] The award or denial of attorney's fees is "in the exercise of a sound discretion, and in the absence of an affirmative showing of error or abuse of discretion we must affirm [the trial court's] order." *Malachowski v. Bank One, Indpls., N.A.*, 682 N.E.2d 530, 533 (Ind. 1997) (quoting *Zaring v. Zaring*, 219 Ind. 514, 39 N.E.2d 734, 737 (1942)). Joseph has not demonstrated that the trial court abused its discretion when it denied his request for fees and expenses.

## Cross-Appeal

[19] In their cross-appeal, Jeffrey and Julie contend that the trial court erred when it denied their joint petition to dissolve and terminate the Trust. In particular, Jeffrey and Julie maintain that Joseph is not operating the same paintball business on the property that he was at the time Wayne executed the Trust. Thus, they assert that the terms of the Trust require Joseph to dissolve the Trust and distribute the property in equal shares to Joseph, Jeffrey, and Julie. In the alternative, Jeffrey and Julie assert that, even assuming Joseph is operating a paintball business consistent with the Trust provisions, the trial court nonetheless should have dissolved and terminated the Trust and distributed the interests in the property equally to Joseph, Jeffrey, and Julie while permitting Joseph to continue to operate the paintball business on the property. We address each contention in turn.

## Paintball Business

[20] Again, the relevant trust provisions at issue here are the following:

> 3.02 *Use of Trust Real Estate*:
>
> During the lifetime of Joseph Stayback, so long as he wishes, he shall have *the right to operate his business known as Sherwood Forest Adventure Games, or other business name as Joe Stayback desires*, on any trust[-]owned real estate and to retain all profits and/or losses of said businesses so as [sic] long as he desires. The Trust shall be responsible to pay yearly taxes regarding said property.
>
> 3.03 *Distribution of Undistributed Income and/or Principal after the Death of Wayne Lewis Stayback*

Upon the death of Wayne Lewis Stayback, the TRUSTEE shall divide the property of the Trust (including the proceeds of any insurance policy payable on the death of Wayne Lewis Stayback), into as many equally [sic] shares as shall be required to provide and make distribution as follows:

1. Joseph Stayback, for as long as he desires, shall be able [to] operate his business on any real estate owned by the Trust and retain all income and losses therefrom.

2. The rest, residue and remainder of my Trust, including real estate subject to paragraph 1 herein above shall be divided equally among Joseph Stayback, Jeffrey Stayback and Julie Warnke, who survive me.

Joint Ex. 1 (some emphasis added).

[21] And the trial court found and concluded in relevant part as follows:

[5.] The language in sections 3.02 and 3.03 is confusing and somewhat contradictory. Just as it is clear in section 3.02 that the Trustor intended Joseph to have the ability to run the paintball business for as long as he desired, section 3.03 (1) clearly states that Joseph has the right to operate his business on any real estate owned by the trust. Section 3.03 (2) indicates that the rest, residue and remainder of the trust, including real estate subject to 3.03 (1) be divided equally between Joseph, Jeffrey, and Julie. The intention of the Trustor in both section 3.02 and 3.03 is to allow Joseph to use the real property now within the Trust for the paintball business. *Although there is some question about the structure of the current business organization, the evidence supports that there is an ongoing paintball business on the property. The real property will continue to be held in the Trust until Joseph no longer operates a paintball business. Joseph will be considered operating a paintball business as long as he is a named owner of a corporate entity*

*involved with the operation of a paintball business on the property*.

Appellant's App. at 8 (emphasis added).

[22] Jeffrey and Julie

> do not contest that there was evidence that a separate corporation was conducting a paintball business on the real estate. However, the evidence does not support that *Joseph* was the one operating a paintball business. At most, Joseph was operating a maintenance company and Sherwood Paintball, Inc. was operating a paintball business. Jeffrey and Julie submit that the trial court erred when it failed to find that[,] once Joseph divested himself of ownership of the operation of the paintball business, the terms of Wayne's Trust no longer existed, and the Trust should have been terminated. The Trust's termination should have resulted in the property being divided equally amongst the three siblings.

Appellees' Br. at 17-18 (emphasis original).

[23] Jeffrey and Julie are correct that, at the time the Trust was created, Joseph owned a business known as Sherwood Forest Adventure Games, a business *entity* that no longer exists. Again, Section 3.02 grants Joseph the right to operate "his business known as Sherwood Forest Adventure Games, or other business name as Joe Stayback desires, . . . [for] as long as he desires." Joint Ex. 1. The first question presented on cross-appeal is whether that provision is ambiguous or unambiguous. If it is ambiguous, we must consider the extrinsic evidence to determine Wayne's intent. *Roy A. Miller & Sons, Inc.*, 775 N.E.2d at 1173.

[24]     In *Baker*, our supreme court held that the term "personal property," while unambiguous by technical definition, was nonetheless ambiguous "in the context of th[e] trust instrument" the court was charged with interpreting on appeal. 843 N.E.2d at 534. And the court considered whether the ambiguity was patent or latent.[3] The court cited with approval *Dougherty v. Rogers*, 119 Ind. 254, 20 N.E. 779, 781 (1889), where the court stated as follows:

> "An ambiguity which arises not upon the words of the will, deed, or other instrument, as looked at in themselves, but upon those words when applied to the object or to the subject which they describe," is a latent ambiguity. 1 Amer. & Eng. Cyclop. 530, and note. Whenever, therefore, in applying a will to the objects or subjects therein referred to, extrinsic facts appear which produce or develop a latent ambiguity not apparent upon the face of the will itself, since the ambiguity is disclosed by the introduction of extrinsic facts, the court may inquire into any other material extrinsic fact or circumstance to which the will certainly refers, as well as to the relation occupied by the testator to those facts, to the end that a correct interpretation of the language actually employed by the testator in his will may be arrived at.

Thus, here, in interpreting the challenged Trust provision, we must apply the words, "business known as Sherwood Forest Adventure Games, or other business name as Joe Stayback desires," to the subject being described, namely, the paintball business operating on the property at the time Wayne executed the

---

[3] The court ultimately held that "the distinction between patent and latent ambiguities is not useful, and it is proper to admit extrinsic evidence to resolve any ambiguity." *Baker*, 843 N.E.2d at 535.

Trust, to determine whether that term of the provision is currently satisfied. Joint Ex. 1; *Dougherty*, 20 N.E. at 781.

[25] Our review of the evidence presented on this question reveals a latent ambiguity in the Trust provision. That is, the evidence shows that, while the business entity known as Sherwood Forest Adventure Games no longer exists, the business currently known as Sherwood Paintball, Inc. is, by all appearances, the same business that was formerly known as Sherwood Forest Adventure Games, and Joseph is, for all intents and purposes, running that business. While it is undisputed that Joseph does not own the business entity known as Sherwood Paintball, Inc., Joseph's role in running the daily operation of the business has not changed since Wayne executed the Trust, and Joseph owns a business entity responsible for maintenance of the paintball fields and equipment. The undisputed evidence shows that Joseph runs the same aspects of the business now that he did at the time that the Trust was created.

[26] By all accounts, the paintball operation on the property has not changed. The only thing that has changed is that the paintball operation is run by two business entities instead of one. Love owns the business entity known as Sherwood Paintball, Inc., and Joseph owns a business entity responsible for maintaining the paintball fields and equipment. In other words, what once was a single business entity running the paintball operation is now two business entities, one of which is owned by Joseph, but both of which are subject to Joseph's ultimate control. Joseph testified that if Love did not "listen to [his] suggestions," his "agreement" with Love could be terminated. Tr. at 82. Love

is, thus, not an independent owner but is allowed to operate the business under Joseph's delegated authority. The evidence is clear that Love would not be operating the business on the property without Joseph's consent and supervision.

[27] We hold that the Trust is ambiguous as to whether the business entity that was known as Sherwood Forest Adventure Games must continue to exist under that or another name in order to keep the property in trust for Joseph's use, or whether it is sufficient that Joseph is running a paintball business owned by a separate business entity, but maintained by him and his new business entity. And we resolve this ambiguity by considering the extrinsic evidence presented at the hearing. Herrbach testified that Wayne "never really talked in terms of how the business was broke [sic] down. He just said, Joe, he wanted to make sure he operated—was able to operate that paintball business." Tr. at 31. And Herrbach testified generally regarding Wayne's love of the paintball business and his desire that it continue after his death:

> A: [Wayne] wanted Joe to be able to continue to run the paintball business on his property. . . . [Wayne] was really involved in the paintball business. He was there every day. He enjoyed talking to the people, enjoyed talking to the paintballers, so I think he—it was his feeling that he wanted that to continue even if he was gone without interference from the estate.
>
> * * *
>
> A: [Under the terms of the Trust,] Joe had a right, as long as he wishes, to run the paintball business on the real estate. And then

the remainder, the rest, residue and remainder was [to be] distributed between the three children.

* * *

A: We talked in terms of making sure that the real estate was available for Joe to continue to run his paintball business.

* * *

A: [It] was Wayne's desire so that the paintball business could continue.

* * *

A: [Wayne liked] the fact that the paintball business would continue. He was really adamant about that.

Tr. at 17, 22, 27, 34, 39.

[28]    The primary goal in construing a trust document is to ascertain and effectuate the intent of the settlor, which may be determined from the language of the trust instrument and matters surrounding the formation of the trust. *In re Stuart Cochran Irrevocable Trust*, 901 N.E.2d 1128, 1140 (Ind. Ct. App. 2009), *trans. denied*. Wayne intended for Joseph to continue operating *his* paintball business, even after Wayne's death, and that business, as Wayne knew it, is ongoing, albeit under different ownership and a different name. Joseph continues to direct many of the operations of the paintball business, even though the named business entity is owned by someone else. And Joseph owns a maintenance

company responsible for maintaining the paintball fields and equipment on the property.

[29] While Joseph does not have an ownership interest in Sherwood Paintball, Inc., it is obvious that Joseph's work is an integral part of making Sherwood Paintball, Inc., a successful enterprise. Joseph testified that he is "still operating the paintball operation in the same manner" that he was at the time Wayne executed the Trust. Tr. at 69. In effect, it is *Joseph's* paintball business that continues on the property. In sum, Joseph has continued to operate the paintball business on the real estate, which was Wayne's purpose and intent in creating the trust. We hold that the trial court did not err when it concluded that Joseph is running a paintball business on the property within the meaning of Sections 3.02 and 3.03 and may continue to do so under the terms of the Trust. And the trial court did not err when it refused to terminate and dissolve the Trust.

### Motion to Terminate and Dissolve Trust

[30] In the alternative, Jeffrey and Julie contend that, even assuming Joseph is permitted to continue running the paintball business on the property, the trial court should have terminated and dissolved the Trust and distributed the assets, including the property, equally among the siblings. Again, Jeffrey and Julie assert that section 3.03 is not ambiguous and, therefore, the trial court erred when it considered extrinsic evidence in interpreting it. In particular, Jeffrey and Julie maintain that the language in section 3.03 "clearly intended . . . that the Trust would be terminated and that Joseph would be entitled to use the land

for his paintball business, as long as he had a paintball business." Appellee's Br. at 14. Further, they state that they

> do not contest that Wayne's intent was to allow Joseph to continue to use the land for his paintball business, however, that intent was not to the exclusion of the termination of the Trust and equal distribution of the land among the three siblings, as clearly stated in Section 3.03 of the Trust.

*Id.*

[31] But we read the plain meaning of Section 3.03 differently. Section 3.03 of the Trust provides that, upon Wayne's death, Joseph shall divide the property of the Trust as follows: first, "for as long as he desires," Joseph is able to operate his business on real estate owned by the Trust "and retain all income and losses therefrom"; and second, the rest, residue and remainder of the Trust, including the real estate subject to the first paragraph, shall be divided equally among Joseph, Jeffrey, and Julie. Joint Exh. 1. While perhaps not artfully drafted, Wayne's intent is clear: Joseph is granted a life estate in the real property for as long as he operates a paintball business on it. At the termination of Joseph's conditional life estate, the property shall be distributed equally among Joseph, Jeffrey, and Julie.

[32] Even if we were to hold that Section 3.03 is ambiguous, the evidence supports the trial court's findings and conclusion that the property shall not be distributed as long as Joseph is operating a paintball business. William

Herrbach, the attorney who drafted the Trust, testified in relevant part as follows:

> Q: And if the real estate is distributed out a third, a third, a third, would that still retain the protection of the spend-thrift clause?
>
> A: In my opinion it would not.
> Q: And why?
>
> A: Well, because then it would become subject to their personal debts, it being their own and be subject to that.
>
> * * *
>
> A: . . . the reality of it is if he takes it out of the Trust, he's really not going to abide by the intention of Wayne, which was to secure that property so that that business could operate.
>
> * * *
>
> A: The intention is clear that [the three siblings] own their share of the property, but the bottom line is if you take it out of [the] Trust I think it's not honoring Wayne's wishes.
>
> * * *
>
> A: You know clearly Wayne wanted to make sure each of his kids got the one-third share of his real estate that they were entitled to, but he didn't want that to really happen until Joe was finished running his business.
>
> Q: And so for the protection of not only Joe, but also for the protection of the other two children, you leave the assets in the Trust?
>
> A: I believe so.

Tr. at 35, 47, 49, 54.

[33] The evidence shows that the overriding purpose of the Trust was to permit Joseph to continue the paintball business after Wayne's death. The trial court's conclusion that the property shall be held in trust as long as Joseph operates a paintball business thereon is not clearly erroneous.

### Conclusion

[34] The trial court did not err when it denied Joseph's motion for fees and expenses. The trial court erred when it ordered that the income from the billboard leases be distributed to Joseph, Jeffrey, and Julie. That income is derived from the real estate held in trust and belongs to Joseph as long as he fulfills the condition of his life estate. And the trial court did not err when it denied Jeffrey and Julie's motion to dissolve and terminate the trust. Wayne loved the paintball business, and the purpose of the Trust was to make certain that Joseph would be able to continue in the paintball business after Wayne's death.

[35] Affirmed in part and reversed in part.

Baker, J., and Friedlander, J., concur.